[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 9, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-15854

_____

D. C. Docket No. 99-00239-CV-AAA-1

MARIE O. PEDRAZA, on behalf of herself
and all other persons similarly situated, et al.,

Plaintiff-Appellee,

versus

UNITED GUARANTY CORPORATION
UNITED GUARANTY RESIDENTIAL
INSURANCE COMPANY,

Defendants,

JOSHUA O. OLORUNNISOMO,

Movant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(December 9, 2002)**

Before BLACK and MARCUS, Circuit Judges, and UNGARO-BENAGES[*], District Judge.

MARCUS, Circuit Judge:

This appeal requires us to address a question of first impression in this circuit: Under what circumstances, if any, can anticipated attorneys' fees properly be included within an appellate cost bond issued by a district court pursuant to either Fed. R. App. P. 7 ("Rule 7") or the court's inherent power to manage its affairs?

The district court concluded that both Rule 7 and its inherent power are legitimate sources of authority for including attorneys' fees within an appellate cost bond, and further, that it was appropriate to rely on both of these bases in holding appellant jointly and severally liable for posting a $180,000 bond, the overwhelming majority of which corresponded to the appellee-class's estimated appellate attorneys' fees. After careful review of the parties' briefs and the body of law that bears on these issues, we conclude that although the district court correctly determined that there are cases in which anticipated attorneys' fees may be included in an appellate cost bond, it erred in holding that this is such a case.

---

[*]Honorable Ursula Ungaro-Benages, United States District Judge for the Southern District of Florida, sitting by designation.

Accordingly, we vacate the district court's bond order and remand for further proceedings consistent with this opinion.

I.

The factual and procedural history of this large class action is straightforward but complex. Plaintiff Marie O. Pedraza is the representative of a class of borrowers who obtained mortgage insurance from defendants United Guaranty Corporation and United Guaranty Residential Insurance Company (collectively "UG").[1] The class claimed that in 1996 UG began systematically paying kickbacks to lenders, which in exchange agreed to steer borrowers to UG for their mortgage insurance needs, and that UG thereby violated the anti-kickback provision contained in the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2607(a).[2]

---

[1]This case actually is one of three companion actions that present the same questions. The other two are captioned: Baynham v. PMI Ins. Co., 01-15855 and Downey v. Mortgage Guar. Ins. Corp., 01-15857.

[2]This section provides: "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(a).

The class filed its complaint on December 17, 1999, and UG promptly responded to these allegations by raising several defenses, including (1) that RESPA did not apply to mortgage insurance; (2) that the "filed-rate doctrine" precluded any recovery; (3) that the McCarran-Ferguson Act barred the application of RESPA; and (4) that claims brought by borrowers who had closed their loans more than one year prior to the filing of the action were barred under RESPA's statute of limitations. UG subsequently moved to dismiss on statute of limitations grounds the claims of all borrowers who had closed their loans prior to December 17, 1998. The district court denied the motion, holding that RESPA's limitations period was subject to equitable tolling for up to three years, provided that the class member pled with particularity that UG had fraudulently concealed its activities, thereby precluding the timely assertion of a claim under § 2607. See Pedraza v. United Guaranty Corp., 114 F. Supp. 2d 1347, 1358 (S.D. Ga. 2000). Accordingly, the class amended its complaint to include allegations that would give rise to equitable tolling for members whose loans had closed between December 17, 1996 and December 17, 1998.

Discovery ensued, and on May 31, 2000 the class moved for certification. Before the court could rule on the motion, however, UG moved for summary judgment based in significant part on the first three defenses listed above. On

4

August 14, 2000, the district court granted summary judgment to UG on the ground that the McCarran-Ferguson Act, 15 U.S.C. § 1012(b),[3] invalidated the class's RESPA claims. The class responded by moving for reconsideration under Fed. R. Civ. P. 59(e), and subsequently by filing a notice of appeal. During the pendency of this motion, settlement negotiations began between UG and the plaintiffs. These discussions ultimately proved fruitful, and on December 15, 2000, the parties filed with the court a proposed settlement.[4] The settlement agreement required UG to pay an amount exceeding $13 million to the class members. Any class member whose claim had accrued between December 17, 1996 and December 17, 1998 was required to submit a form indicating that he or she was unaware of UG's practices prior to the latter date. Although the class agreed to relinquish any future claims against UG, its members retained the right to cancel their mortgage insurance policies. Moreover, UG agreed to permanently cease and desist from two of the alleged kickback practices. On December 20,

---

[3]That subsection provides, in pertinent part, that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b).

[4]Proposed settlements were filed in companion class actions Baynham and Downey on the same date.

2000, the court conditionally certified the class, ordered that the class members be notified, and scheduled a fairness hearing for June 15, 2001.

On February 7, 2001, a notice of pendency of class proposed settlement was filed, and then on March 6, 2001 notice of this settlement was published in nationally circulating newspapers. These notices delineated not only the terms of the settlement, but also the lengthy procedural history of the case and the right of class members to opt out. They also announced an April 24, 2001 deadline for the submission of objections to the settlement. Ultimately, out of 670,000 class members, three filed timely objections and 277 opted out of the class. More than 25,000 members whose claims were potentially subject to equitable tolling submitted claim forms to receive their payments.

On May 17, 2001, Olorunnisomo filed an untimely objection to the settlement, a motion for leave to file a late objection, and a motion for leave to intervene. On June 8, 2001, the district court held a hearing on appellant's motions, and denied on timeliness grounds his requests to intervene and to file an objection. Roughly a week later, the court held its fairness hearing, at which Olorunnisomo was permitted to argue that a Texas subclass, i.e., a subclass comprised of Texas residents, should be created. Specifically, appellant contended that (1) given the facts at bar, Tex. Ins. Code § 21.48A provided class

members with an automatic right of recovery; and (2) UG's filed-rate defense was not recognized in Texas. Accordingly, he argued that it was unfair to require that the claims of class members residing in Texas be governed by the less advantageous provisions of Georgia law. The district court considered and rejected these contentions, and approved the settlement with only one minor change, viz., that 20% of the attorneys' fees were to be withheld pending distribution of the settlement proceeds to the class. As a corollary of its approval of the settlement, the court vacated its previous summary judgment order.

On July 6, 2001, Olorunnisomo filed both a Rule 59 motion for reconsideration and a notice of appeal from the orders approving the settlement and denying his request to intervene. He asserted that our then recent holding in Wooden v. Bd. of Regents, 247 F.3d 1262 (11th Cir. 2001), established that the district court's certification of the class constituted error. However, on September 19, 2001 the district court denied his Rule 59 motion for lack of standing, and appellant amended his notice of appeal to encompass the September 19, 2001 order as well.

While Olorunnisomo's motion for reconsideration was pending, the class moved to require all objectors and would-be intervenors who had filed notices of appeal to post bonds for attorneys' fees, damages, costs and interest that would be

7

lost on appeal. Although appellant opposed the inclusion of anticipated attorneys' fees in the requested bond, he did not contest the amount of the bond sought by the class. The district court determined that attorneys' fees were properly bondable under Fed. R. App. P. 7, and in support of this conclusion it cited the holding of the United States Court of Appeals for the Second Circuit in <u>Adsani v. Miller</u>, 139 F.3d 67, 71-76 (2d Cir.), <u>cert. denied</u>, 525 U.S. 875, 119 S. Ct. 176, 142 L. Ed. 2d 144 (1998). <u>See</u> <u>Baynham v. PMI Mortgage Ins. Co.</u>, No. 199-241, slip op. at 6 (S.D. Ga. Oct. 1, 2001) (reasoning that <u>Adsani</u>'s approach to Rule 7 "best comports with the 'American Rule'" that absent exceptional circumstances each litigant bears responsibility for its own attorneys' fees). The district court also indicated that it could include attorneys' fees in an appellate cost bond pursuant to its inherent power to manage its affairs. <u>See id.</u> at 4.[5]

However, the district court recognized the existence of constraints on its authority to require the posting of such a bond. In particular, it determined that the standard that governs the propriety of including attorneys' fees in an appellate cost bond is set forth in <u>Independent Fed'n of Flight Attendants v. Zipes</u>, where the Supreme Court held that attorneys' fees could not be assessed against losing Title

---

[5]Although the district court's holding technically related to the <u>Baynham</u> action, its holding applied with equal force to <u>Pedraza</u> and <u>Downey</u>.

VII intervenor-plaintiffs unless their claims were "frivolous, unreasonable or without foundation." 491 U.S. 754, 761, 109 S. Ct. 2732, 2737, 105 L. Ed. 2d 639 (1989). The district court concluded that the Zipes standard was satisfied in this case, stating: "Having asserted no new reason supporting their contention that the denial of intervention was an abuse of the Court's discretion, the Court finds that the appeal of the denial of intervention is without foundation." Baynham, slip op. at 9-10 (emphasis added).

Ultimately, the district court granted the class's bond motion in part and denied it in part,[6] and held six objectors,[7] who had manifested an intent to appeal, jointly and severally responsible for posting a $180,000 bond. This bond encompassed both filing and copying costs, but also -- and more significantly from the perspective of this appeal -- approximately $29,000 per appellant in anticipated attorneys' fees. See id. at 12.

---

[6]The court granted the requested bond except insofar as the class sought compensation for the interest it would lose while the case was on appeal. It reasoned that plaintiffs were not entitled to any compensation until the conclusion of all appeals, so they were not losing any interest to which they were otherwise entitled as a consequence of any appeal. See Baynham, slip op. at 13-14.

[7]This figure includes two objectors in Pedraza, three in Baynham and one in Downey. In several instances, the objector in question actually is a married couple, the members of which are parties to the same loan, and accordingly are considered a single objector.

9

On October 15, 2001, Olorunnisomo filed a notice of appeal from the district court's bond order, and it is this appeal that presently is before us.  Appellant challenges the order on the grounds that:  (1) the term "costs," as used in Fed. R. App. P. 7, does not encompass estimated attorneys' fees on appeal; (2) even if Rule 7 permitted the inclusion of anticipated appellate attorneys' fees in some contexts, RESPA is not such a context, as attorneys' fees are explicitly distinguished from "costs" in § 2607(d)(5); (3) the district court lacked the inherent power to set an appellate cost bond to cover items not encompassed under Fed. R. App. P. 7; (4) district courts are not permitted to impose a bond to cover anticipated sanctions on appeal, i.e., to cover attorneys' fees that, it anticipates, will be shifted as a punitive or deterrent measure; (5) the court erred in determining that Olorunnisomo's appeal of the court's denial of his motion for leave to intervene was "without foundation"; (6) the court's decision to hold Olorunnisomo jointly and severally liable for the class's anticipated costs and attorneys' fees constituted an abuse of discretion; and (7) setting the bond for substantially more than what Olorunnisomo can be required to pay contravened the Fifth Amendment's Due Process Clause.

## II.

Typically, a district court's decision to impose a cost bond pursuant to Fed. R. App. P. 7 is reviewed for abuse of discretion.  See Adsani, 139 F.3d at 71.

However, a trial court's legal determination as to the proper interpretation of Rule 7's language -- e.g., whether the term "costs" should be read to encompass attorneys' fees -- is reviewed <u>de novo</u>. <u>See id.</u> (citation omitted). The exercise of the court's inherent powers is reviewed for abuse of discretion. <u>See Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 50, 111 S. Ct. 2123, 2136, 115 L. Ed. 2d 27 (1991). However, a determination as to the scope of those powers is a legal conclusion, and as such is reviewed <u>de novo</u>. <u>See generally Christo v. Padgett</u>, 223 F.3d 1324, 1336 (11th Cir. 2000).

Federal Rule of Appellate Procedure 7 provides in pertinent part:

> In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary <u>to ensure payment of costs on appeal</u>.

Fed. R. App. P. 7 (emphasis added). This case requires us to determine whether the term "costs," as used in this rule, includes anticipated appellate attorneys' fees. Alhough we never have addressed the issue before, this precise question was analyzed in 1998 by the Second Circuit. <u>See Adsani</u>, 139 F.3d at 71-75. Given the paucity of caselaw on this point -- only the D.C. and Third Circuits have joined the Second Circuit in addressing it directly[8] -- coupled with the persuasiveness of the

---

[8]The First Circuit has touched on this issue, but has done so by implication only. <u>See Sckolnick v. Harlow</u>, 820 F.2d 13, 15 (1st Cir. 1987).

11

Adsani court's discussion and fact that the arguments of the instant litigants track those advanced before the Second Circuit, we examine the Adsani decision in some detail.

Adsani was a copyright infringement case in which summary judgment was granted by the district court in favor of the defendants.[9] Adsani filed a timely notice of appeal, and the district court required her, pursuant to Fed. R. App. P. 7, to post a bond in the amount of $35,000, a figure which included estimated appellate attorneys' fees. The district court cited in support of its decision the facts that the plaintiff had no assets in the United States and posted no supersedeas bond pursuant to Fed. R. App. P. 8.[10] Adsani appealed this bond order, and argued --

---

[9]Because of the subject matter of the dispute, the case implicated the fee shifting provision codified at 17 U.S.C. § 505, which states:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.

[10]The Second Circuit summarized the distinction between a cost bond under Fed. R. App. P. 7 and a supersedeas bond under Fed. R. App. P. 8 in these terms: "It appears that a 'supersedeas bond' is retrospective covering sums related to the merits of the underlying judgment (and stay of its execution), whereas a 'cost bond' is prospective relating to the potential expenses of litigating an appeal." Adsani, 139 F.3d at 70 n.2.

precisely as Olorunnisomo does in this case -- that the definition of the term "costs" in Rule 7 is supplied by Fed. R. App. P. 39, which plainly excludes from its scope attorneys' fees.[11]  The defendants countered by arguing -- as the class presently does -- that the list of costs contained in Rule 39 is irrelevant, and that instead the propriety of including attorneys' fees in a Rule 7 bond should be evaluated by referring to the definition of "costs" contained in the statutory fee shifting provision that attends the plaintiff's underlying cause of action.  In other words, they posited that if the fee shifting provision that applies to the underlying cause of action includes attorneys' fees within awardable "costs," then Rule 7 "costs" may likewise be said to encompass attorneys' fees.  Thus, the Adsani defendants asserted that in copyright cases, which implicate 17 U.S.C. § 505, see supra note 8, Rule 7 bonds may properly include attorneys' fees.  Here, the class similarly attempts to support its position by pointing to RESPA's fee shifting provision, which provides that "the court may award to the prevailing party the

---

[11]The relevant language is found in Rule 39(e), which says that four distinct costs related to the taking of an appeal "are taxable in the district court for the benefit of the party entitled to costs under this rule." Fed. R. App. P. 39(e).  These are:  1) the preparation and transmission of the costs of the record; 2) the reporter's transcript, if needed; 3) the premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and 4) the fee for filing the notice of appeal.  See id.

court costs of the action together with reasonable attorneys fees."  12 U.S.C. § 2607(d)(5).

In Adsani, the Second Circuit ultimately sided with the defendants, and in so doing squarely rejected Adsani's argument that Rule 39 supplies the definition of "costs," as that term is used in Rule 7.  It did so because Rule 39 contains no definition of "costs" at all, and instead clarifies the circumstances when costs should or may be awarded, see Fed. R. App. P. 39(a) & (b), requires the courts of appeals to establish rules pertaining to the taxation of copying costs, see Fed. R. App. P. 39(c), sets forth procedural requirements for the obtainment of costs, see Fed. R. App. P. 39(d), and finally lists some costs that are taxable in the district court.  See Fed. R. App. P. 39(e).  Notably, the rule never sets forth an exhaustive list or a general definition of "costs."  This analysis is plainly correct.  Under no fair reading of the simple, unambiguous language of Rule 39 can an exportable definition of "costs" be perceived in the language of that provision.

This is so, we believe, despite the contrary conclusions of several treatises and the two circuit level decisions other than Adsani to address this issue.  See Hirschensohn v. Lawyers Title Ins. Corp., 3d Cir., 1997, (No. 96-7312, June 10, 1997); In re Am. President Lines, Inc., 779 F.2d 714, 716 (D.C. Cir. 1985); 20 James Wm. Moore et al., Moore's Federal Practice ("Moore's") § 307.10[2], at

14

307-6 (3d ed. 2002) ("Attorney's fees . . . are not considered to be costs under Appellate Rule 7."); Wright, Miller & Cooper, Federal Practice & Procedure ("Wright, Miller & Cooper") § 3953, at 293 (3d ed. 1999) ("The costs secured by a Rule 7 bond are limited to costs taxable under Appellate Rule 39. They do not include attorney fees that may be assessed on appeal.").[12]

---

[12]In concluding that only the costs discussed in Rule 39 may be the subject of a Rule 7 bond, the Hirschensohn court relied heavily on the Third Circuit's earlier opinion in McDonald v. McCarthy, 966 F.2d 112, 116 (3d Cir. 1992). Yet in McDonald, the Third Circuit simply joined a long list of courts in reaching the uncontroversial conclusion that attorneys' fees are not included among the "costs" contemplated by Rule 39. See id. Although this decision undoubtedly was correct, the exclusion of attorneys' fees from Rule 39 "costs" in no way informs (or purports to inform) the definition of the term "costs" in Rule 7. Indeed, in our view, the Hirschensohn court did not adequately explain its application of the valid proposition expressed in McDonald in the context of Rule 7. Although the court did cite several treatises in support of its conclusion, including Wright, Miller & Cooper, it is notable that the most recent edition of that treatise relies on Hirschensohn as fully one-half of its support for this reading of Rule 7. See Wright, Miller & Cooper, Federal Practice & Procedure § 3953, at 293.

We add that In re Am. President Lines, Inc., cited no case law in support of its bare conclusion that "[t]he costs referred to [in Rule 7] . . . are simply those that may be taxed against an unsuccessful litigant under Federal Appellate Rule 39, and do not include attorneys' fees that may be assessed on appeal." 779 F.2d at 716. Although the court cited the same treatises as did the Hirschensohn court, the current version of Wright, Miller & Cooper relies on In re Am. President Lines as the other half of its support for the limitation of Rule 7 "costs" to those discussed in Rule 39. See Wright, Miller & Cooper, Federal Practice & Procedure § 3953, at 293. Moore's present edition features this case as its only circuit level support for this proposition. See Moore's § 307.10[2], at 307-6.

15

Indeed, as the <u>Adsani</u> court noted, neither <u>In re Am. President Lines</u> nor <u>Hirschensohn</u> arose in the context of an underlying statute that provides for the shifting of attorneys' fees.  <u>See</u> 139 F.3d at 73-74.  Accordingly, the Second Circuit, we think correctly, found both of these precedents to be distinguishable and neither to be compelling given the precise contours of the dispute then at bar. Instead, the court took Rule 39 at face value; while that Rule certainly limits the universe of costs on appeal that are taxable in the district court, it does not attempt to -- much less can it be read to -- set forth an omnibus, generalizable definition of "costs" that governs the construction of Fed. R. App. P. 7.  As the <u>Adsani</u> court said:  "We find that Adsani's argument that Rule 39's 'definition' of costs should be imported into Rule 7 is unavailing because Rule 39 has no definition of the term 'costs' but rather defines the circumstances under which costs should be awarded." 139 F.3d at 75.

Instead of gleaning the meaning of Rule 7 "costs" from Rule 39, the <u>Adsani</u> court determined that the definition of that term (as it is used in Rule 7) should be derived from the statutory fee shifting provision that attends the plaintiff's underlying cause of action.  In support of this conclusion, the Second Circuit relied heavily on the Supreme Court's decision in <u>Marek v. Chesny</u>, 473 U.S. 1, 105 S. Ct. 3012, 87 L. Ed. 2d 1 (1985).  <u>Marek</u> was a § 1983 action brought jointly by the

16

father and estate of a police shooting victim. Prior to the rendering of the jury's verdict, the defendants tendered a settlement offer of $100,000. See id. at 3-4, 105 S. Ct. at 3013-14. This was rejected by the plaintiffs, who ultimately were awarded $60,000, and subsequently sought attorneys' fees pursuant to 42 U.S.C. § 1988. See id. at 4, 105 S. Ct. at 3014. Although these fees totaled $171,692, all but $32,000 of this sum had been incurred after the defendants had made their settlement offer. See id. The defendants argued that "costs," as used in Fed. R. Civ. P. 68,[13] included attorneys' fees, and that as such they were not liable for any of the fees incurred by the plaintiffs after the rejection of the settlement offer. See id. Accordingly, the question confronting the Supreme Court in Marek was whether attorneys' fees are included within the definition of "costs" under Fed. R. Civ. P. 68.

In holding in the affirmative, the Court first acknowledged the general applicability of the American Rule regarding fee shifting, i.e., that each party bears its own attorneys' fees. See Marek, 473 U.S. at 8, 105 S. Ct. at 3016; Aleyska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257, 95 S. Ct. 1612, 1621,

---

[13]That rule provides, in pertinent part, that "[i]f the judgment finally obtained by the offeree is not more favorable than the [pre-judgment settlement] offer [that the offeree rejected], the offeree must pay the costs incurred after the making of the offer." Fed. R. Civ. P. 68 (emphasis added).

44 L. Ed. 2d 141 (1975) (discussing "the general rule that, absent statute or enforceable contract, litigants pay their own attorneys' fees") (citations omitted). However, the Court proceeded to note that Congress indisputably possesses the authority to abrogate the rule in any given circumstance. See Marek, 473 U.S. at 8, 105 S. Ct. at 3016; Aleyska Pipeline, 421 U.S. at 260, 95 S. Ct. at 1623 ("[W]hile fully recognizing and accepting the general rule [Congress has made] specific and explicit provisions for the allowance of attorneys' fees under selected statutes granting or protecting various federal rights.").

The Supreme Court then set forth a list of statutes that permit attorneys' fees to be awarded as "costs" and observed:

> The authors of Federal Rule of Civil Procedure 68 were fully aware of these exceptions to the American Rule. The Advisory Committee's Note to Rule 54(d) . . . contains an extensive list of the federal statutes which allowed for costs in particular cases; of the 35 "statutes as to costs" set forth in the final paragraph of the Note, no fewer than 11 allowed for attorney's fees as part of costs. Against this background of varying definitions of "costs," the drafters of Rule 68 did not define the term; nor is there any explanation whatever as to its intended meaning in the history of the Rule. In this setting, given the importance of "costs" to the Rule, it is very unlikely that this omission was mere oversight; on the contrary, the most reasonable inference is that the term "costs" in Rule 68 was intended to refer to all costs properly awardable under the relevant substantive statute or other authority. In other words, all costs properly awardable in an action are to be considered within the scope of Rule 68 "costs." Thus, absent congressional expressions to the contrary, where the underlying statute defines "costs" to include attorney's fees, we are satisfied such fees are to be included as costs for purposes of Rule 68.

18

Marek, 473 U.S. at 8-9; 105 S. Ct. at 3016.

Federal Rule of Appellate Procedure 7 does not differ from Federal Rule of Civil Procedure 68 in any way that would lead us to adopt a different interpretive approach in this case than was embraced by the Supreme Court in Marek. Quite the contrary, close scrutiny reveals that there are several substantive and linguistic parallels between Rule 68 and Rule 7. Both concern the payment by a party of its opponent's "costs," yet neither provision defines the term "costs." See Adsani, 139 F.3d at 74 ("Rule 7 does not have a pre-existing definition of costs any more than Fed. R. Civ. P. 68 . . . had its own definition."). Moreover, just as the drafters of Rule 68 were aware in 1937 of the varying definitions of costs that were contained in various federal statutes, the same certainly can be said for the authors of Rule 7, which bears an effective date of July 1, 1968. As such, the reasoning that guided the Marek Court's determination that Rule 68 "costs" are to be defined with reference to the underlying cause of action is equally applicable in the context of Rule 7.

As is specifically relevant in this case, section 8 of RESPA, 12 U.S.C. § 2607, was enacted in 1974. See Culpepper v. Inland Mortgage Corp., 132 F.3d 692, 695 (11th Cir. 1998). Congress amended this section effective January 1, 1984 to provide that "the court may award to the prevailing party the court costs of the

19

action together with reasonable attorneys fees."  12 U.S.C. § 2607(d)(5).

Following this change, Rule 7 was itself stylistically amended on December 1, 1998.  Accordingly, the drafters of the present incarnation of Rule 7 must not only have been aware in general terms that numerous federal statutes encompass attorneys' fees within the definition of "costs," see Marek, 473 U.S. at 9, 105 S. Ct. at 3016, but also of the fact and nature of RESPA's fee shifting regime.  This timetable also weighs in favor of defining Rule 7 "costs" in the context of a RESPA action by referring to the definition of that term contained in § 2607(d)(5).

Also counseling in favor of the adoption of the Marek approach in the context of Rule 7 is the fact that this interpretive method is consonant with the purposes underlying that rule, as well as the primary rationales underlying fee shifting statutes generally and § 2607(d)(5) in particular.  The purpose of Rule 7 itself appears to have been correctly ascertained by the Adsani court, which held that:

> The court has made a determination that this particular appellant poses a payment risk because she has no assets in the United States and has failed to post a supersedeas bond.  The purpose of Rule 7 appears to be to protect the rights of appellees brought into appeals courts by such appellants . . . .

139 F.3d at 75.

By contrast, the fee shifting provisions in various federal statutes serve two purposes.  The first is "to ensur[e] the effective prosecution of meritorious claims."

20

Kay v. Ehrler, 499 U.S. 432, 437, 111 S. Ct. 1435, 1438, 113 L. Ed. 2d 486 (1991).

Second, fee shifting provisions help to "protect defendants from burdensome litigation having no legal or factual basis." Christiansburg Garment Co. v. EEOC, 434 F.3d 412, 420, 98 S. Ct. 694, 700, 54 L. Ed. 2d 648 (1978). Courts have ascribed the former purpose to § 2607(d)(5). See Glover v. Standard Fed. Bank, 283 F.3d 953, 965 (8th Cir. 2002) ("Congress has guaranteed legal representation under RESPA by permitting attorneys fees and costs as part of each allowable recovery. This permits and encourages individual consumers to raise valid RESPA claims.") (internal citations omitted); Mullinax v. Radian Guar., Inc., 199 F. Supp.2d 311, 318 (M.D.N.C. 2002) (stating that the fee shifting provision ensures that the RESPA's substantive facets will be enforced).

If Fed. R. App. 7 is read to include attorneys' fees within the definition of "costs" whenever Congress has so defined the term in the statutory fee shifting provision that attends the plaintiff's underlying cause of action, then in appropriate qualifying cases -- e.g., where there is a significant risk of insolvency on the appellant's part -- district courts can require that the fees that ultimately would be shiftable be made available ab initio. It seems clear to us that the guaranteed availability of appellate attorneys' fees prior to the taking of an appeal will further

21

the goal of providing incentives to attorneys to file (or defend against) such appeals.  Notably, this reasoning coincides with the aim of Rule 7, namely, "to protect the rights of appellees brought into appeals courts by . . . appellants [who have no assets in the United States and have failed to post a supersedeas bond]." Adsani, 139 F.3d at 75.  This reading of Rule 7 also furthers the second purpose underlying fee shifting statutes, i.e., to protect defendants from the burdens that stem from being forced to defend frivolous lawsuits and to deter plaintiffs from bringing such suits. Simply stated, an appellant is less likely to bring a frivolous appeal if he is required to post a sizable bond for anticipated attorneys' fees prior to filing the appeal.[14]

For the foregoing reasons, both Marek and Adsani's persuasive application of that decision lead us to conclude that the meaning of "costs," as used in Rule 7, should be derived from the definition of costs contained in the statutory fee shifting provision that attends the plaintiff's underlying cause of action.

---

[14]We note, however, that although the possible inclusion of such fees within a Rule 7 bond serves this goal, appellees will be largely protected against such baseless claims even were we to adopt the approach to Rule 7 urged by Olorunnisomo.  This is so because appellate courts may on motion dismiss frivolous claims at the outset (that is, before substantial fees are incurred).  See Am. President Lines, 779 F.2d at 717.  Moreover, upon sustaining such a challenge, an award of fees and double costs would be warranted under Fed. R. App. P. 38.  See Geaneas v. Willets, 911 F.2d 579, 582 (11th Cir. 1990).

## III.

Although we believe that pursuant to Rule 7 attorneys' fees may be included in an appellate cost bond, this does not answer the ultimate question whether the district court properly included attorneys' fees within the bond in this case. The precise question at issue before the Second Circuit -- and before the Supreme Court in Marek -- is distinguishable from the one presented here, because there is a powerful linguistic distinction between the fee shifting provisions codified at 17 U.S.C. § 505 and 42 U.S.C. § 1988 on the one hand, and RESPA's fee shifting provision, 12 U.S.C. § 2607(d)(5), on the other. Specifically, § 1988 provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b) (emphasis added). § 505 features identical language. See 17 U.S.C. § 505 ("[T]he court may . . . award a reasonable attorney's fee to the prevailing party as part of the costs.") (emphasis added). By contrast, under RESPA "the court may award to the prevailing party the court costs of the action together with reasonable attorneys fees." 12 U.S.C. § 2607(d)(5) (emphasis added). Seizing on this linguistic distinction, Olorunnisomo contends that the reasoning of the Second Circuit does not compel the same conclusion in this case as was reached in Adsani. We agree.

Each and every statute cited in <u>Marek</u> as including attorneys' fees within the definition of allowable costs features either the words "as part of the costs" or similar indicia that attorneys' fees are encompassed within costs. See <u>Marek</u>, 473 U.S. at 8, 105 S. Ct. at 3016. For example, § 77k(e) of the Securities Act of 1933 describes "the costs of . . . suit, including reasonable attorney's fees." 15 U.S.C. § 77k(e); <u>see also</u> 15 U.S.C. § 78i(e) (same). Indeed, in setting forth the governing legal principle in that case, the Supreme Court observed: "where the underlying statute <u>defines 'costs' to include attorney's fees</u>, we are satisfied such fees are to be included as costs for purposes of Rule 68." <u>Marek</u>, 473 U.S. at 9, 105 S. Ct. 3016 (emphasis added). The Court did not say that where the underlying statute permits the award of both costs and attorneys' fees, fees are to be included as costs for Rule 68 purposes. In explaining its holding, the Court stated: "This 'plain meaning' interpretation of the interplay between Rule 68 and § 1988 <u>is the only construction that gives meaning to each word</u> in both Rule 68 and § 1988." <u>Id.</u>, 105 S. Ct. at 3017 (emphasis added).

In contrast with the statute at issue in <u>Marek</u> and those described by the Supreme Court in that case is RESPA's fee shifting provision, § 2607(d)(5). This section, again, provides for the award of the "costs of the action <u>together with</u> reasonable attorneys fees." 12 U.S.C. § 2607(d)(5) (emphasis added). Simply

24

stated, the words "together with" are substantively and critically different from the phrase "as part of." Whereas the latter phrase plainly encompasses attorneys' fees within the universe of awardable costs, the former connotes that costs and fees are distinct entities that are commonly awardable. Indeed, Justice Brennan explicitly recognized this in Marek, as § 2607(d)(2)(b)[15] is designated in the appendix to his dissenting opinion as an example of a statute that does not include attorneys' fees within "costs." See 473 U.S. at 48, 105 S. Ct. at 3037 (Brennan, J., dissenting).

We must assume that Congress selected the words "together with" carefully, i.e., that while it wanted both costs and attorneys' fees to be awardable under RESPA, it did not want them treated as being indistinct in the context of this statute. See generally United States v. Steele, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc) ("[W]e must presume that Congress said what it meant and meant what it said."). This is especially so given that Congress had on so many previous occasions enacted statutes designating attorneys' fees "as part of costs." To hold otherwise would be to impermissibly ignore this obvious difference between the language of RESPA and these other statutes, and thereby disregard the Supreme

---

[15]This provision was the historical antecedent of, and linguistically identical to, that presently codified at § 2607(d)(5).

Court's admonition in <u>Marek</u> that every word of a statute, e.g., "together with," is to be afforded meaningful effect.  <u>See</u> 473 U.S. at 9, 105 S. Ct. at 3017.

Thus, although we adopt the approach to defining Rule 7 "costs" taken by Second Circuit, that analysis yields the opposite conclusion in this case from the one it produced in <u>Adsani</u>.  This is so because RESPA's fee shifting provision, § 2607(d)(5), explicitly distinguishes attorneys' fees from awardable "costs."  As such, the district court erred in this case to the extent that it relied on Fed. R. App. P. 7 in imposing a cost bond that encompassed anticipated appellate attorneys' fees.

IV.

The district court also relied on its inherent power to manage its affairs as an alternate basis for its inclusion of estimated attorneys' fees within the appellate cost bond that it required of Olorunnisomo.  The court was correct in recognizing that in addition to enjoying broad discretion to manage litigation before them, federal courts possess the inherent power to require the posting of cost bonds and to provide for the award of attorneys' fees.  <u>See</u> <u>Chambers</u>, 501 U.S. at 47-48, 111 S. Ct. at 2134-35 (attorneys' fees);  <u>HMG Prop. Investors, Inc. v. Parque Indus. Rio Canas, Inc.</u>, 847 F.2d 908, 916 (1st Cir. 1988) (bonds).  Notably, courts possess

these powers "even if procedural rules exist which [govern] the same conduct." Chambers, 501 U.S. at 49, 111 S. Ct. at 2135.

However, insofar as a district court employs its inherent power to require one party to pay -- or, indeed, bond -- his adversary's attorneys' fees, this necessarily constitutes an exception to the American Rule. As the Supreme Court explained in Chambers, there are three permissible exceptions of this variety:

> [I]n narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel, even though the so-called "American Rule" prohibits fee shifting in most cases. As we explained in Alyeska [Pipeline Serv. Co. v. Wildnerness Soc'y, 421 U.S. 240, 257-59, 95 S. Ct. 1612, 1621-23, 44 L. Ed. 2d 141 (1975)], these exceptions fall into three categories. The first, known as the "common fund exception," derives not from a court's power to control litigants, but from its historic equity jurisdiction, and allows a court to award attorney's fees to a party whose litigation efforts directly benefit others. Second, a court may assess attorney's fees as a sanction for the willful disobedience of a court order. Thus, a court's discretion to determine [t]he degree of punishment for contempt permits the court to impose as part of the fine attorney's fees representing the entire cost of the litigation. Third, and most relevant here, a court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.

501 U.S. at 45-46, 111 S. Ct. at 2133 (internal citations and quotation marks omitted); see also F.D. Rich Co., Inc. v. U.S. for the Use of Indus. Lumber Co., Inc., 417 U.S. 116, 129-30, 94 S. Ct. 2157, 2165, 40 L. Ed. 2d 703 (1974) ("We have long recognized that attorneys' fees may be awarded to a successful party when his

opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or where a successful litigant has conferred a substantial benefit on a class of persons and the court's shifting of fees operates to spread the cost proportionately among the members of the benefitted class. The lower courts have also applied a rationale for fee shifting based on the premise that the expense of litigation may often be a formidable if not insurmountable obstacle to the private litigation necessary to enforce important public policies."), superseded by statute on other grounds, 31 U.S.C. § 3905(j).

In this case, none of the circumstances identified in Chambers are present. Beginning with the first, although Pedraza's efforts unquestionably benefitted her class, Olorunnisomo is not part of that class. Accordingly, appellant did not benefit from her actions as class representative, and the "common fund exception" is not implicated by the facts of this case. See Alyeska Pipeline, 421 U.S. at 257, 95 S. Ct. at 1621 (discussing "the historic power of equity to permit the trustee of a fund or property, or a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorneys' fees, from the fund or property itself or directly from the other parties enjoying the benefit") (emphasis added). Nor is the second situation contemplated by Chambers present here; there

28

is no allegation or indication that Olorunnisomo willfully disobeyed any court order.

This leaves the third scenario mentioned by the Chambers Court, viz., that the fee shifting is warranted because Olorunnisomo acted in bad faith, vexatiously, wantonly, or for oppressive reasons. Yet the district court explicitly did not conclude that this standard is satisfied here, holding instead that "the appeal of the denial of intervention is without foundation." Baynham, slip op. at 10 (emphasis added). Though the court thus found appellant's appeal to be objectively meritless, this is vastly different from the subjective bad faith contemplated by the third exception to the American Rule identified in Chambers. Indeed, in Christiansburg Garment -- from which the Zipes standard employed by the district court was derived -- the Court explicitly distinguished a claim that is "without foundation" from one advanced in subjective bad faith. See 434 U.S. at 421, 98 S. Ct. at 700 ("In sum, a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.").

In imposing the bond against Olorunnisomo, the district court said nothing that can be construed as a finding that appellant had acted in bad faith, vexatiously,

wantonly, or for oppressive reasons. Instead, the court focused exclusively on the objective merit of his claims. Although the objectively unreasonable advancement of a claim warrants the imposition of statutorily-authorized attorneys' fees against, for example, a Title VII plaintiff (or intervenor, under Zipes), it is insufficient to justify an analogous action pursuant to the court's inherent power. See Baker v. Health Mgmt. Sys., Inc., 264 F.3d 144, 149 (2d Cir. 2001) ("Under the inherent power of the court to supervise and control its own proceedings, an exception to the American Rule has evolved which permits the court to award a reasonable attorneys' fee to the prevailing party when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. '[A]n action is brought in bad faith when the claim is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons.'" (quoting Hirschfeld v. Bd. of Elections, 984 F.2d 35, 40 (2d Cir. 1993))) (other citations and internal quotation marks omitted).

Accordingly, although the district court could have required Olorunnisomo to include attorneys' fees in an appellate bond pursuant to its inherent power to manage its affairs, it did not make the requisite factual findings in this case that would have permitted it to do so.

V.

30

In sum, the district court's requirement that Olorunnisomo post an appellate cost bond that included estimated attorneys' fees was not justified under Fed. R. App. P. 7 because RESPA's fee shifting provision, § 2607(d)(5), does not define "costs" to include attorneys' fees, and was not warranted under its inherent power to manage its affairs because the court did not find that appellant had acted in bad faith, vexatiously, wantonly, or for oppressive reasons. Although the district court was free to require Olorunnisomo to post an appellate cost bond, it was improper to include anticipated attorneys' fees within such a bond.[16] Accordingly, we vacate the court's order and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**

---

[16]Given this holding, it is unnecessary for us to address any of appellant's various other arguments.