[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 9, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-15857

_____

D. C. Docket No. 00-00108-CV-AAA-1

MARY C. DOWNEY, on behalf of
themselves and all other persons
similarly situated, JAMES M. MENGER,
JR., et al.,

Plaintiffs-Appellees,

versus

MORTGAGE GUARANTY INSURANCE
CORPORATION,

Defendant,

MICHAEL B. HOPKINS, ROBIN H. HOPKINS,

Movants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(December 9, 2002)**

Before BLACK and MARCUS, Circuit Judges, and UNGARO-BENAGES[*], District Judge.

MARCUS, Circuit Judge:

This is one in a series of three companion class actions that have been filed against mortgage insurance companies pursuant to the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2607(a).  The other two are captioned:  Pedraza v. United Guaranty Corp., 01-15854 and Baynham v. PMI Mortgage Ins. Co., 01-15857.  The ultimate question in each of these appeals is whether the district court properly required the appellant(s) to post an appellate cost bond that included the plaintiff-class's anticipated attorneys' fees.

In Pedraza, we held that a cost bond issued pursuant to Fed. R. App. P. 7 ("Rule 7") may properly include anticipated attorneys' fees if the statutory fee shifting provision that attends the plaintiff's underlying cause of action defines "costs" to include such fees.  However, RESPA's fee shifting provision, § 2607(d)(5), explicitly distinguishes "costs" from attorneys' fees, and thus Rule 7 "costs" do not include attorneys' fees where RESPA claims are concerned.  We also held in Pedraza that the district court had not found that the appellant, Joshua O. Olorunnisomo, had advanced his claims on appeal "in bad faith, vexatiously,

_____

[*]Honorable Ursula Ungaro-Benages, United States District Judge for the Southern District of Florida, sitting by designation.

2

wantonly, or for oppressive reasons," <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 45-46, 111 S. Ct. 2123, 2133, 115 L. Ed. 2d 27 (1991), and that accordingly the district court could not validly have included estimated attorneys' fees in the appellate cost bond pursuant to its inherent power to manage its affairs. Because the district court's actions in <u>Pedraza</u> were permissible under neither Rule 7 nor its inherent power, it erred by including attorneys' fees within the bond.

Although the facts presented in this appeal differ slightly from those at issue in <u>Pedraza</u>, the legal questions and result are identical. As in <u>Pedraza</u>, the <u>Downey</u> class reached with defendant Mortgage Guaranty Insurance Company ("MGIC") a proposed settlement that entitled class members to submit objections until April 24, 2001. On that date, appellants Michael B. and Robin H. Hopkins ("the Hopkinses")[1] timely objected to the proposed settlement,[2] asserting that the terms of the agreement were unreasonable and unfair. Subsequently, on June 6, 2001, the Hopkinses filed an untimely motion to intervene.[3] They simultaneously served a proposed complaint in intervention, in which they requested for the first time the

---

[1]The Hopkinses are a married couple, and are parties to the same loan. Accordingly, they are considered a single objector.

[2]This objection actually was filed jointly with Ernest and Debra Kelley ("the Kelleys"), who attempted to intervene in <u>Baynham</u>.

[3]This motion also was filed jointly with the Kelleys.

creation of a separate Texas subclass[4] and that they be appointed the named representatives of this subclass. They argued specifically that there were questions of law and fact that were common to this subclass but were inapplicable to the claims of class members who resided outside Texas.

On June 8, 2001, the district court held a hearing on appellants' intervention motion, which it denied on timeliness grounds. Roughly a week later, the district court held its fairness hearing, at which they were permitted to repeat their arguments in favor of the creation of a Texas subclass. The court considered and rejected these contentions, and approved the settlement with only one minor change, namely that 20% of the attorneys' fees were to be withheld pending distribution of the settlement proceeds to the class. As a corollary of its approval of the settlement, the court denied MGIC's motion for judgment on the pleadings. The Hopkinses filed with the Kelleys a joint notice of appeal from the denial of their intervention motion.

On August 31, 2001, the class moved to require appellants to post a bond for attorneys' fees, damages, costs and interest that would be lost on appeal. Although the Hopkinses opposed the inclusion of attorneys' fees in the requested bond, they did not contest the amount of the bond sought by the class. The district court

---

[4]The Hopkinses were Texas residents.

4

determined that attorneys' fees were properly bondable under Fed. R. App. P. 7, and in support of this conclusion it cited the holding of the United States Court of Appeals for the Second Circuit in Adsani v. Miller, 139 F.3d 67, 71-76 (2d Cir.), cert. denied 525 U.S. 875, 119 S. Ct. 176, 142 L. Ed. 2d 144 (1998). See Baynham v. PMI Mortgage Ins. Co., No. CIV.199-241, slip op. at 6 (S.D. Ga. Oct. 1, 2001) (reasoning that Adsani's approach to Rule 7 "best comports with the 'American Rule'" that absent exceptional circumstances each litigant bears responsibility for its own attorneys' fees). The court also indicated that it could include attorneys' fees in an appellate cost bond pursuant to its inherent power to manage its affairs. See id. at 4.[5]

Ultimately, the district court granted the class's motion in part and denied it in part,[6] and held six objectors[7] who had manifested an intent to appeal jointly and severally responsible for posting a $180,000 bond (representing an assessment of

---

[5]Although the district court's holding technically related to the Baynham action, its holding applied with equal force to Pedraza and Downey.

[6]The court granted the requested bond except insofar as the class sought compensation for the interest it would lose while the case was on appeal. It reasoned that plaintiffs were not entitled to any compensation until the conclusion of all appeals, so they were not losing any interest to which they were otherwise entitled as a consequence of any appeal. See Baynham, slip op. at 13-14.

[7]This figure includes three objectors in Baynham, two in Pedraza and one in Downey.

$30,000 per likely appellant). This bond encompassed both filing fees and copying costs, but also -- and more significantly from the perspective of this litigation -- approximately $29,000 per appellant in anticipated attorneys' fees. See id. at 12.

On October 15, 2001, the Hokinses filed their notice of appeal from the district court's bond order, and it is this appeal that presently is before us. Appellants' grounds for challenging the order are identical to those on which the Pedraza class relied in contesting the bond in that action.

As we explained in Pedraza, although a Rule 7 cost bond can properly include anticipated appellate attorneys' fees where the statutory fee shifting provision that attends the plaintiff's underlying cause of action defines "costs" to include such fees, RESPA's fee shifting provision, § 2607(d)(5), explicitly distinguishes attorneys' fees from "costs." The import of this distinction, which we discussed at length in Pedraza, is in no way affected by the relatively minor factual variances between that case and this one; both feature § 2607 as the operative cause of action. Accordingly, just as the district court could not properly have required Olorunnisomo to post a Rule 7 cost bond that encompassed estimated attorneys' fees, it could not validly have imposed such a requirement on the Hopkinses.

Nor do the factual distinctions between these appeals affect the propriety of the district court's invocation of its inherent power to manage its affairs as a basis for the inclusion of attorneys' fees within the appellate cost bond. The Hopkinses have benefitted from the actions of Downey, the Mengers and Sheehan no more than Olorunnisomo did from the actions of Pedraza, and accordingly the "common fund exception" is inapplicable here. We also note that there is no allegation that appellants willfully disobeyed a court order. Moreover, the court's description of their claims on appeal as being "without foundation" fell equally short of a finding that in advancing these claims appellants had acted "in bad faith, vexatiously, wantonly, or for oppressive reasons," Chambers, 501 U.S. at 45-46, 111 S. Ct. at 2133, as did its identical characterization of Olorunnisomo's claims. Thus, as we held in Pedraza, although the district court could have required appellants to include attorneys' fees in an appellate bond pursuant to its inherent power to manage its affairs, it did not make the requisite factual findings in this case that would have permitted it to do so.

In sum, although the district court was free to require the Hopkinses to post an appellate cost bond, it was improper to include anticipated attorneys' fees

within such a bond.[8]  Accordingly, we vacate the court's order and remand for

further proceedings consistent with this opinion.

**VACATED AND REMANDED.**

---

[8]Given this holding, it is unnecessary to address any of appellants' various other arguments.