[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 9, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-11554

_____

D. C. Docket No. 01-01151-CV-AR-S

JOSEPH YOUNG,
DARREL SIMS,
MARK STEVEN GREER,
MORRIS PICKETT,

Plaintiffs-Appellants,

versus

NEW PROCESS STEEL, LP,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(August 9, 2005)

Before CARNES and PRYOR, Circuit Judges, and FORRESTER[*], District Judge.

_____

[*] Honorable J. Owen Forrester, United States District Judge for the Northern District of
Georgia, sitting by designation.

CARNES, Circuit Judge:

This appeal brings us a question of first impression: May a district court require, as a condition for appealing a judgment, that a losing plaintiff in a civil rights case post a Fed. R. App. P. 7 bond that includes the defendant's anticipated appellate attorney's fees? The front line position of the appellants in this case, plaintiffs who lost their Title VII and 42 U.S.C. § 1981 lawsuit, is that the district court cannot order them to post such a bond, regardless. Their fall back position is that the court cannot do it without making a finding consistent with Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n, 434 U.S. 412, 98 S. Ct. 694 (1978), that the would-be appeal is frivolous, unreasonable, or groundless. Although we reject the plaintiffs' primary position, we do find merit in their secondary one.

## I.

In May 2001 Joseph Young, Darrel Sims, Mark Greer, and Morris Pickett filed a lawsuit against their employer, New Process Steel, L.P., pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e et. seq. Their complaint alleged various forms of racial discrimination, including a racially hostile work environment and various adverse employment actions. Young sued under Title VII and § 1981, while the other plaintiffs sued

2

only under § 1981. New Process Steel moved to dismiss Young's Title VII claims and, alternatively, moved for partial summary judgment on those claims. In response, Young moved to amend his complaint to bring all of his claims under § 1981. The court granted both Young's motion to amend and New Process Steel's motion to either dismiss or grant summary judgment against Young's Title VII claims.

In July 2002 Greer filed a new lawsuit alleging that he had been fired by New Process Steel after the original action was filed and that the firing was retaliatory. The new lawsuit was consolidated with the original one. Meanwhile the plaintiffs' attorney informed New Process Steel that the plaintiffs planned to pursue only their hostile work environment claims. In response, New Process Steel filed, pursuant to Fed. R. Civ. P. 41, an unopposed motion to dismiss all of the plaintiffs' other claims, the ones alleging racial discrimination regarding overtime and promotions. The court granted that motion and dismissed with prejudice all of those other claims, leaving for trial only the racially hostile work environment claims and Greer's retaliation claim.

The first trial of those remaining claims ended in a mistrial in June of 2003, which was granted on motion of the defendant, which was apparently made as a result of some comments by the plaintiffs or their attorneys to the jurors.

Thereafter, on Greer's own motion his retaliation claim was dismissed, leaving for the second trial only the plaintiffs' hostile work environment claims. That trial ended in a jury verdict and final judgment for the defendant in October 2003. The four plaintiffs filed their notice of appeal from that judgment on November 21, 2003.

On February 5, 2004, the district court, without prodding from the defendant, entered an order stating:

> Pursuant to Rule 7, Federal Rule of Appellate Procedure, this court would require appellant to file a bond or provide other security in an amount necessary to ensure payment of costs on appeal if the potential costs taxable on appeal can be fairly approximated. If appellee wishes to invoke Rule 7, it shall within fourteen (14) days submit evidentiary materials to support the fixing of a bond amount.

Being able to take a hint when hit over the head with one, the defendant responded by filing a motion that asked the court to require the plaintiffs to post a bond. The defendant sought to have the bond cover its anticipated appellate attorney's fees as well as the other costs it would incur as a result of the appeal. The motion was accompanied by affidavits estimating the amount of those attorney's fees. In granting the motion in its entirety, the district court relied on Pedraza v. United Guar. Corp., 313 F.3d 1323 (11th Cir. 2002), which it called "potent medicine." The order the court entered required the plaintiffs to post a cost bond in the amount

of $61,000 as a prerequisite to their appeal. All but $1,000 of that amount was to cover the attorney's fees the defendant estimated it would incur in the appeal.

The defendant's motion did not allege, and the court's order did not pretend to find, that the plaintiffs' appeal would be frivolous, unreasonable, or groundless. Instead, the court expressly disavowed the need for a finding of that nature. In a memorandum opinion accompanying its order, the court stated: "The fixing of a Rule 7 bond, pursuant to Pedra[]za v. United Guaranty Corp., 313 F.3d 1323 (11th Cir. 2002), does not require the court to predict whether or not a defendant will prevail on appeal, or to require that defendant demonstrate that the appeal is frivolous."

The plaintiffs appealed the district court's imposition of the Rule 7 bond. See Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546–47, 69 S. Ct. 1221, 1225–26 (1949) (a district court's order requiring one party to post security prior to appealing is a final appealable order). Their putative appeal on the merits was stayed pending the appeal of the bond issue. Without hearing oral argument, a panel of this Court issued a decision vacating the district court's order requiring the bond and remanding with instructions that the court not include the defendant's anticipated appellate attorney's fees in the Rule 7 bond absent a finding that the plaintiff's appeal would be frivolous, unreasonable, or groundless. Young v. New

5

Process Steel, L.P., No. 04-11554 (11th Cir. Nov. 23, 2004) (per curiam). The defendant filed a petition for rehearing en banc. In response, the original panel vacated its earlier opinion and set the case for rehearing before an oral argument panel of the Court. We are the new panel and have heard oral argument on the issue.

## II.

While this Court generally reviews a district court's imposition of a Rule 7 cost bond only for abuse of discretion, Pedraza, 313 F.3d at 1328, that limited standard does not mean much in this case, which turns on a pure law issue involving the interpretation of Rule 7. We decide pure law issues de novo, id., which is another way of saying that a ruling based on an error of law is an abuse of discretion. Koon v. United States, 518 U.S. 81, 100, 116 S. Ct. 2035, 2047 (1996) ("A district court by definition abuses its discretion when it makes an error of law."); United States v. Brown, 332 F.3d 1341, 1343 (11th Cir. 2003) (same); United States v. Hall, 349 F.3d 1320, 1323 (11th Cir. 2003) (an error of law "is by definition an abuse of discretion").

Rule 7 has two sentences, but only the first one has any relevance to the issue before us. That sentence provides: "In a civil case, the district court may require an appellant to file a bond or provide other security in any form and

6

amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. The rule does not define "costs" for its purposes, but this Court went a long way toward doing so, at least for cases where a fee-shifting statute is involved, in our Pedraza decision. There we explained that the word "costs" for Rule 7 purposes should draw its meaning from the fee-shifting statute applicable to the underlying case. Pedraza, 313 F.3d at 1333.

Pedraza was a case arising under 12 U.S.C. § 2607(a) of the Real Estate Settlement Procedures Act, and the applicable fee-shifting provision in that statute stated that "the court may award to the prevailing party the court costs of the action together with reasonable attorneys fees." 12 U.S.C. § 2607(d)(5) (emphasis added). We explained that the words "together with" meant that attorney's fees were recoverable in addition to costs, not as part of costs. Pedraza, 313 F.3d at 1333–34. For that reason, we concluded that in a RESPA case the district court could not order appellants to post a Rule 7 bond that included anticipated appellate attorney's fees. Id. at 1334–35. It could not, because the fee-shifting statute applicable to the underlying RESPA lawsuit, 12 U.S.C. § 2607(d)(5), did not include attorney's fees in its definition of "costs," 313 F.3d at 1334–35, and Rule 7 does not authorize courts to require a bond in an amount larger than "costs" as defined in the applicable fee-shifting statute.

7

We said more in Pedraza, and the more we said has direct relevance to this case. Explicating our holding in Pedraza by giving an example of its converse, we stated that a district court could order a losing plaintiff to post a Rule 7 bond that included anticipated appellate attorney's fees if 42 U.S.C. § 1988 were the underlying fee-shifting statute. See 313 F.3d at 1333–35. That's because § 1988 expressly allows the court to award the prevailing party "a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b) (emphasis added). Thus, where § 1988 is the applicable fee-shifting statute, "costs" includes anticipated appellate attorney's fees. In our present case, of course, § 1988 is the provision that governs fee-shifting, as it will in civil rights cases generally.

Of course, the statement in Pedraza about what should be done in a case where § 1988 is the fee-shifting source is probably dictum, because that case was not before this Court then. See Watts v. BellSouth Telecomm., Inc., 316 F.3d 1203, 1207 (11th Cir. 2003); United States v. Aguillard, 217 F.3d 1319, 1321 (11th Cir. 2000) (per curiam). We are not bound to follow dictum, but do accord it any respect it earns through its persuasive value. See New Port Largo, Inc. v. Monroe County, 985 F.2d 1488, 1500 n.7 (11th Cir. 1993) (Edmondson, J., specially concurring). The statement in Pedraza about § 1988 is not incidental or oh-by-the-way dictum, but instead illustrates the nature and extent of the rule that

8

was actually used to decide the case. For that reason, we are persuaded to give the statement more respect than we might afford dicta that was not as closely intertwined with the reasoning and result of the decision containing it. See Local 28 of Sheet Metal Workers' Int'l Ass'n v. Equal Employment Opportunity Comm'n, 478 U.S. 421, 490, 106 S. Ct. 3019, 3057 (1986) (O'Connor, J., concurring in part and dissenting in part) ("Although technically dicta, . . . an important part of the Court's rationale for the result it reached . . . is entitled to greater weight . . . ."). Even though not required to adhere to Pedraza's statement that Rule 7 permits inclusion of a defendant's appellate attorney's fees as part of a cost bond where § 1988 applies, we nonetheless choose to follow it. The statement makes sense, and it expresses a conclusion compelled by the reasoning that led the Court to reach the result it did in Pedraza.

The plaintiffs contend that Pedraza's statement about the proper interpretation of Rule 7 where § 1988 applies, which is to say in civil rights cases, is wrong. The statement is wrong, they say, because it is inconsistent with that provision's pronounced plaintiff preference. Although the language of § 1988 is itself party-neutral, the Supreme Court held in Christiansburg that while "a prevailing [civil rights] plaintiff ordinarily is to be awarded attorney's fees in all but special circumstances," Christiansburg, 434 U.S. at 417, 98 S. Ct. at 698

9

(emphasis omitted), a district court should not award attorney's fees to a prevailing civil rights defendant absent "a finding that the plaintiff's action was frivolous, unreasonable, or without foundation," id. at 421, 98 S. Ct. at 700.

The plaintiffs in this case ask us to carry over Christiansburg's pro-plaintiff interpretation of the fee-shifting provision of § 1988 into Rule 7's appellate bond provision. Actually, that is their back up position. Their primary position asks us to slant Rule 7 even further toward plaintiffs than Christiansburg slanted § 1988. What they primarily want us to do is hold that attorney's fees can never be included in the bond an appealing plaintiff can be required to post in a case covered by § 1988, not even where the appeal is going to be frivolous, unreasonable, or without foundation.

The Christiansburg decision argues against the absolutist position the plaintiffs advocate. The Supreme Court did not hold in Christiansburg that attorney's fees could never be awarded to prevailing defendants; it only restricted the circumstances in which that could happen. We can faithfully follow the Christiansburg decision by holding that the same restrictions applied by it to the award of attorney's fees under § 1988 also apply to the inclusion of attorney's fees in a Rule 7 cost bond. Rule 7's language makes no distinction between plaintiffs and defendants ("may require an appellant to file a bond"), just as the fee-shifting

10

provisions of § 1988 do not ("may allow the prevailing party . . . a reasonable attorney's fee").

And the same policy reasons are at play in both contexts. The reason that attorney's fees are awarded to successful plaintiffs as a matter of course where § 1988 applies is that in civil rights cases plaintiffs are "the chosen instrument of Congress." Christiansburg, 434 U.S. at 418, 98 S. Ct. at 699. Congress has decided to implement its civil rights laws by effectively deputizing individuals to act as "private attorney general[s]" while they pursue their own interests as plaintiffs. Newman v. Piggie Park Enter., Inc., 390 U.S. 400, 402, 88 S. Ct. 964, 966 (1968). Reimbursing successful plaintiffs for the cost of their attorneys out of the losing defendants' pockets serves a dual function: it provides an incentive for bringing the lawsuits, and it adds to the costs of those who violate the civil rights of others. Id.; Christiansburg, 434 U.S. at 418–19, 98 S. Ct. at 699.

By contrast, a victorious defendant in a civil rights action is not the "chosen instrument of Congress," few defendants need any incentive to defend themselves when sued, and a losing plaintiff in a civil rights case has not been found to have violated anyone's civil rights. Hence the rule announced in Christiansburg that defendants who win civil rights lawsuits generally cannot recover their attorney's fees from plaintiffs. To that general rule, however, the Supreme Court in

11

Christiansburg also announced an exception:   A court may award attorney's fees under § 1988 to a prevailing defendant where the court finds that "the plaintiff's action was frivolous, unreasonable, or without foundation."  Christiansburg, 434 U.S. at 421, 98 S. Ct. at 700.  This exception, the Supreme Court explained, is appropriate because "while Congress wanted to clear the way for suits to be brought under the [underlying civil rights] Act, it also wanted to protect defendants from burdensome litigation having no legal or factual basis."  Id. at 420, 98 S. Ct. at 700.  Put a little differently, requiring plaintiffs to pay the defendant's attorney's fees where there clearly was no good reason to bring the lawsuit discourages groundless lawsuits, which is a good thing in the civil rights area as in others.

The Christiansburg rule applies not only to trials in civil rights cases, but also to appeals by plaintiffs in them.  Because a heavy majority of judgments are affirmed on appeal, most appeals by plaintiffs in civil rights cases do not ultimately result in righting a wrong under the civil rights acts.  But some do.  And when they do, the plaintiffs are awarded attorney's fees for the appellate part of their effort as well as for the trial part.  See Lattimore v. Oman Constr., 868 F.2d 437, 440 & n.6 (11th Cir. 1989) (affirming the district court's grant of appellate attorney's fees to a prevailing civil rights plaintiff), abrogated on other grounds by

12

City of Burlington v. Dague, 505 U.S. 557, 112 S. Ct. 2638 (1992). Likewise, when a plaintiff who was unsuccessful at trial fares no better on appeal, the plaintiff is not assessed the appellate attorney's fees of the defendant unless the appeal was frivolous, unreasonable, or without foundation. See Bugg v. Int'l Union of Allied Indus. Workers of Am., Local 507, 674 F.2d 595, 599–601 (7th Cir. 1982).

Applying the reasoning of the Christiansburg decision to the Rule 7 context, a general rule requiring a losing plaintiff in a civil rights case to post a bond that includes the defendant's attorney's fees on appeal would discourage and might prevent some appeals for which there is a good basis. As a result, individuals would be prevented from acting as private attorneys general to pursue through the appellate process the enforcement of the civil rights acts.[1] That would be bad policy at the appellate stage of the process for the same reasons it is at the trial stage.

---

[1] We are not persuaded by the defendant's assurance that if a plaintiff in a civil rights case cannot afford to post a bond that includes the defendant's anticipated attorney's fees on appeal, the plaintiff can always move to proceed in forma pauperis. See Fed. R. App. P. 24. The plaintiffs insist there is a gap between qualifying for in forma pauperis status and being able to post a large bond, and that they fall in it. We need not decide if there are some plaintiffs who are too poor to post a bond but too affluent to qualify for IFP status. Cf. Page v. A.H. Robins Co., 85 F.R.D. 139, 140 (E.D. Va. 1980) ("A logical counterpart to Appellate Rule 7 is Appellate Rule 24, which pertains to appeals in forma pauperis."). We need not decide that because even for plaintiffs who can afford to post appeal bonds, the larger the bond amount, the higher the cost of appealing; and the higher the cost of appealing, the greater the disincentive for doing so.

By the same token, however, a plaintiff who is unsuccessful in a civil rights suit at trial should not be freed from the burden of an appellate bond that includes anticipated attorney's fees where the appeal is likely to be frivolous, unreasonable, or without foundation. On appeal, as at trial, applying full cost disincentives in those circumstances is consistent with the intent of Congress "to protect defendants from burdensome litigation having no legal or factual basis." Christiansburg, 434 U.S. at 420, 98 S.Ct. at 700.

While happy to have Christiansburg's general rule imported into the Rule 7 area, the plaintiffs want us to clip from that rule the exception for frivolous appeals. They argue that in this context the Christiansburg exception is unnecessary and impractical. It is unnecessary to discourage frivolous appeals in civil rights cases, they say, because Fed. R. App. P. 38 already serves that function in all cases. Rule 38 does allow an appellate court, after motion from the appellee or after issuing its own notice, to order the appellant to pay damages and single or double costs for a frivolous appeal. Nonetheless, the argument that Rule 38 obviates the necessity for the Christiansburg exception at the appellate level does not measure well against experience or logic.

Experience has shown that because most appellees just want to be rid of the annoyance of a baseless appeal with as little additional fuss as possible, the trickle

of Rule 38 motions does not nearly approximate the flood of frivolous appeals. And given all of the demands on the time of appellate courts, few Rule 38 notices issue without a motion. These forces combine to make Rule 38 a toothless tiger in most instances. Not only that, but logically it is better to prevent frivolous appeals than to punish those who bring them after the case has taken the time of the appellate court. We expect that at least some baseless appeals will be stopped at the Rule 7 stage, sooner rather than later in the process and with greater savings in time and effort.

The plaintiffs' impracticality argument against recognizing the Christiansburg exception in the Rule 7 context posits that it will be "extremely difficult" for a district court to determine prospectively whether an appeal is going to be frivolous, unreasonable, or without foundation. District courts, however, have a great deal of experience weighing the merits of potential appeals. In every one of the thousands of proceedings in which a state prisoner denied 28 U.S.C. § 2254 relief or a federal prisoner denied 28 U.S.C. § 2255 relief seeks to appeal, the district court that denied relief must determine whether there is likely to be enough substance to an appeal for one to be allowed. See Fed. R. App. P. 22(b)(1) ("In a habeas corpus proceeding . . . [i]f an applicant files a notice of

appeal, the district judge who rendered the judgment must either issue a certificate of appealability or state why a certificate should not issue.").

In deciding whether to allow an appeal from the denial of § 2254 or § 2255 relief to proceed, the district court must decide if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court has held that a procedural bar to relief exists, it must also decide if the prisoner has made a substantial showing that the procedural ruling was wrong. See Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04 (2000). These determinations, which district courts routinely make in order to decide whether the denial of § 2254 or § 2255 relief can be appealed, are not perfectly analogous to the determination they must make in order to decide whether a judgment denying relief in a civil rights case can be appealed. Deciding whether a "substantial showing" has been made is not the same thing as determining whether an appeal will be frivolous, unreasonable, or without foundation. But both tasks essentially involve evaluating a plaintiff's possibility of success on appeal based on what the court has seen of his case at the trial level. That is enough of a similarity to convince us that district courts will be able to assess prospectively appeals from the denial of relief in a civil rights case under a scale heavily tilted in favor of the plaintiff who wants to appeal.

16

In summary, reading Rule 7 against the <u>Christiansburg</u> decision, we hold that a district court may not require an unsuccessful plaintiff in a civil rights case to post an appellate bond that includes not only ordinary costs but also the defendant's anticipated attorney's fees on appeal, unless the court determines that the appeal is likely to be frivolous, unreasonable, or without foundation. If the court does make that determination, it has discretion to grant the defendant's motion and require the plaintiff to post a bond in the amount of the defendant's anticipated costs including appellate attorney's fees.

But it need not do so. Because Rule 7 states the authority it gives in terms of "may," the district court may decide not to require an appeal bond or to require one that does not include the amount of the defendant's anticipated attorney's fees on appeal. See <u>Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n</u>, 636 F.2d 755, 757 n.2 (D.C. Cir. 1980) ("[T]he new Rule 7, effective August 1979, leaves the requirement of an appeal bond to the district court's discretion . . . . We cannot dismiss American's appeal for failure to post a bond the district court chose not to require."); <u>Pan Am. Grain Mfg. Co. v. P.R. Ports Auth.</u>, 193 F.R.D. 26, 43 (D.P.R. 2000) ("Rule 7 leaves to the discretion of the district court in a civil case whether to require the filing of a bond for costs on appeal."); <u>Lundy v. Union Carbide</u>

17

Corp., 598 F.Supp. 451, 452 (D. Or. 1984) ("The requirement of an appeal bond under Appellate Rule 7 is left to the discretion of the district court.").

Of course, the fact that a plaintiff in a civil rights case is required to post a Rule 7 bond that includes anticipated appellate attorney's fees does not mean the plaintiff will be required to pay attorney's fees if the judgment is affirmed on appeal. This Court will award a defendant who succeeds in preserving a judgment against a plaintiff in a civil rights case attorney's fees only if we find that the plaintiff's appeal turned out to be frivolous, unreasonable, or without foundation within the meaning of the Christiansburg decision.

We **REVERSE** the district court's order imposing a Rule 7 bond in the amount of $61,000, and **REMAND** the case for further proceedings consistent with this opinion.