# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 10, 2013

No. 12-60385
c/w No. 12-60586

Lyle W. Cayce
Clerk

NOATEX CORPORATION, a California Corporation,

Plaintiff-Appellee,

v.

KING CONSTRUCTION OF HOUSTON, L.L.C., a Mississippi limited liability company; CARL KING,

Defendants-Appellants,

v.

State of Mississippi, ex rel., JIM HOOD, Mississippi Attorney General,

Intervenor-Appellant.

---

NOATEX CORPORATION, a California Corporation,

Plaintiff-Appellant,

v.

KING CONSTRUCTION OF HOUSTON, L.L.C., a Mississippi limited liability company; CARL KING,

Defendants-Appellees,

v.

State of Mississippi, ex rel., JIM HOOD, Mississippi Attorney General,

Intervenor.

Nos. 12-60385 & 12-60586

---

Appeals from the United States District Court
for the Northern District of Mississippi

---

Before STEWART, Chief Judge, and DAVIS and WIENER, Circuit Judges.

CARL E. STEWART, Chief Judge:

These appeals arise out of the district court's resolution of matters concerning an invocation of Mississippi's "Stop Notice" statute, Miss. Code Ann. § 85-7-181 ("Stop Notice statute"), by King Construction of Houston. The State of Mississippi ("the State") challenges the district court's determination that Mississippi's Stop Notice statute is facially unconstitutional. We AFFIRM. We DENY King's motion to dismiss its appeal.

In a separate appeal, No. 12-60586, Noatex challenges the district court's denial of its motion for further relief and stay of an appeal bond determination. We consolidated the cases for oral argument and we now consolidate them for disposition. We AFFIRM.

## I.  FACTS AND PROCEDURAL HISTORY

### A.    The Stop Notice Proceeding

Auto Parts Manufacturing Mississippi ("APMM") contracted with Noatex for the latter to construct an auto parts manufacturing facility in Guntown, Mississippi. Noatex subcontracted with King Construction to provide some materials and labor. Noatex alleges that APMM owes it money for goods and services that Noatex previously provided to APMM. A billing dispute also arose between Noatex and King Construction, in which Noatex questioned some of the invoices submitted to it by King Construction. In response to this dispute, King Construction notified APMM on September 23, 2011, pursuant to Mississippi's Stop Notice statute, that Noatex owed King Construction $260,410.15, and that, therefore, King Construction was filing a "Laborer's and Materialman's Lien and

2

Nos. 12-60385 & 12-60586

Stop Notice" in Mississippi chancery court. On the date of notification, APMM owed Noatex $179.707.40.

The effect of this notice was that funds in the amount of $260,410.15 were "bound in the hands" of APMM. *See* Miss. Code Ann. § 85-7-181 ("[T]he amount that may be due . . . shall be bound in the hands of such owner for the payment in full . . . ."). Further, under a related section of the Mississippi Code, § 85-7-197,[1] King Construction's filing of the stop notice in the lis pendens record of the chancery court had the effect of establishing King Construction's lien priority over the property that was the subject of the dispute. APMM later deposited the $260,410.15 in the registry of the chancery court.

## B. Procedural History

Three lawsuits resulted from this dispute. First, Noatex filed a declaratory judgment action against King Construction and its principal Carl King (collectively "King"), challenging the facial constitutionality and constitutionality-as-applied of the Stop Notice statute. The State intervened in that action to defend the constitutionality of its statute. Second, APMM filed an interpleader action in Mississippi chancery court, seeking resolution of the funds subject to King Construction's stop notice. Noatex removed this interpleader

---

[1] Section 85-7-197, provides, *inter alia*, that in order for a subcontractor to establish a lien on the property that is the subject of its stop notice, the subcontractor must: 1) reduce its claim to writing, showing the basis of its claim, all parties affected, the property to be bound, and provide "an affidavit to the writing"; and 2) notify the construction project owner in person or by certified mail, return receipt requested, attaching the original stop notice and an affidavit attesting to the date and manner that notice was given. Miss. Code Ann. § 85-7-197. After satisfying these requirements, "notice may be delivered to the clerk of the chancery court" who records the claim in the "lis pendens record." *Id.* Importantly, the subcontractor *may*, but is not required to, record the stop notice or the accompanying affidavit with the chancery court in order to establish lien priority under § 85-7-197. The benefit of § 85-7-197 is merely to establish the priority of any lien ultimately determined to exist on behalf of the claimant.

3

Nos. 12-60385 & 12-60586

action to the district court.[2]   Third, Noatex filed suit against King Construction for breach of contract in district court, claiming damages in excess of $500,000.[3]

### 1.     *The Declaratory Action No. 12-60385*

On April 12, 2012, the district court granted Noatex's motion for summary judgment in the declaratory action.  The district court held that § 85-7-181, the Stop Notice statute, was facially unconstitutional because it deprived contractors of property without due process.  King and the State appealed.  King subsequently filed a purportedly unopposed motion to withdraw its appeal pursuant to Fifth Circuit Rule 42.1.  Noatex filed a response in opposition to this motion, asserting that it had never consented to King's withdrawal and further, that King was attempting to evade potential liability for attorney's fees.  King's motion was carried with this case.

### 2.     *The District Court's Denial of Noatex's Motions No. 12-60586*

Following the district court's declaratory judgment, Noatex filed several other motions in the district court, including a motion for attorney's fees based on the declaratory action, a motion for further relief, and a motion for an appeal bond to secure payment of costs on appeal from King.  Noatex's motion for further relief requested damages against King equal to the amount of the stop

---

[2] The district court initially remanded APMM's interpleader action to Mississippi chancery court on jurisdictional grounds.  Noatex petitioned this court for a writ of mandamus seeking to direct the district court to recall the remand order, which we denied.  *In re Noatex Corp.*, No. 12-60374 (5th Cir. July 19, 2012) (order dismissing petition for writ of mandamus). We subsequently withdrew our opinion and directed the district court to clarify its remand order.  *In re Noatex Corp.*, No. 12-60374 (5th Cir. Aug. 23, 2012) (order withdrawing the dismissal of mandamus and remanding the case for clarification).  The district court, *sua sponte*, determined its remand was improper and vacated its prior order.  *See Auto Parts Mfg. Miss., Inc. v. King Constr. of Houston LLC*, No.1:11-cv-00251 (N.D. Miss. Dec. 5, 2012) (order vacating remand to chancery court).  The interpleader case remains pending in the district court. *See Auto Parts Mfg. Miss., Inc. v. King Constr. of Houston LLC*, No.1:11-cv-00251 (N.D. Miss. filed Dec. 5, 2011).

[3] The district court recently granted Noatex's motion to voluntarily dismiss its breach of contract action without prejudice.  *Noatex Corp. v. King Constr. of Houston LLC*, No. 3:11-cv-00152 (N.D. Miss. Aug. 27, 2013) (order granting motion to dismiss).

Nos. 12-60385 & 12-60586

notice plus interest, as well as attorney's fees it had incurred (and may continue to incur) in the interpleader action. Noatex's motion for an appeal bond included attorney's fees among the estimated costs of appeal. The district court denied Noatex's motion for further relief and stayed all other proceedings, including Noatex's attorney's fees motion in the declaratory action and appeal bond motion, pending our resolution of the appeal of the district court's ruling on the constitutionality of the Stop Notice statute. Noatex now appeals these orders of the district court, asserting that it was entitled to further relief and challenging the validity of the district court's stay with respect to its motion for an appeal bond.

## II. DISCUSSION

We first address the issues presented by the State and King on appeal—the constitutionality of the Stop Notice statute and King's motion to dismiss its appeal. We then address the issues presented by Noatex—the district court's denial of its motion for further relief and the district court's stay of its motion for an appeal bond.

### A.    Mississippi's Stop Notice Statute

"We review a district court's grant of summary judgment *de novo*, applying the same legal standards as the district court. Summary judgment should be granted if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Ballard v. Devon Energy Prod. Co.*, 678 F.3d 360, 365 (5th Cir. 2012) (quoting Fed. R. Civ. P. 56(c)). In a facial challenge to the constitutionality of a statute, "the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). "[S]tatutes should be construed whenever possible so as to uphold their constitutionality." *United States v. Vuitch*, 402 U.S. 62, 70 (1971).

5

Nos. 12-60385 & 12-60586

In assessing a due process challenge, we must consider the nature of the property interest being deprived and the sufficiency of the procedural safeguards in protecting an erroneous deprivation of that interest. *See Boddie v. Connecticut*, 401 U.S. 371, 377–79 (1971); *see also generally Fuentes v. Shevin*, 407 U.S. 67 (1972) (addressing both the nature of the property interest at stake and the procedural safeguards). "[E]ven the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection. Without doubt, state procedures for creating and enforcing attachments, as with liens, 'are subject to the strictures of due process.'" *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991) (quoting *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 85 (1988)).

We apply a version of the familiar *Mathews v. Eldridge*, 424 U.S. 319 (1976) balancing test in assessing the sufficiency of the process set out by such state statutes. In doing so, we weigh such factors as the private interests implicated, the risk of erroneous deprivation, the probable value of additional safeguards, and the interests of the party seeking the prejudgment remedy, coupled with the "ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections." *Doehr*, 501 U.S. at 10–11. Importantly, "an individual [must] be given an opportunity for a hearing before he is deprived of any *significant property interest*, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Fuentes*, 407 U.S. at 82 (internal quotations omitted) (emphasis added).

Mississippi's Stop Notice statute provides in part:

> When any contractor [employed by an owner] . . . shall not pay . . . the amount due by him to any subcontractor therein, . . . [subcontractor] may give notice in writing to the owner thereof of the amount due [to subcontractor] and claim the benefit of this section; and . . . the amount that may be due upon the date of the

6

Nos. 12-60385 & 12-60586

> service of such notice . . . shall be bound in the hands of such owner
> for the payment in full . . . of all sums due such . . . subcontractor . . .
> who might lawfully have given notice in writing to the owner
> hereunder.

Miss. Code Ann. § 85-7-181. If after the subcontractor provides such notice, the contractor sues the owner for the funds, the owner "may pay into court[] the amount due on the contract," and all parties with an interest in the funds may be made parties to the suit and the matter adjudicated accordingly. *Id.* If judgment is entered against the owner, "such judgment shall be a lien from [] the date of the original notice." *Id.*

Noatex alleged, and the district court agreed, that this procedure deprives contractors of their property—the funds bound—without due process of law, because it provides insufficient pre-deprivation procedural safeguards. On appeal, the State contends that the district court erred in finding a significant property interest because the district court equated the statute to an attachment as opposed to a mechanic's or supplier's lien. The State also contends that the district court mis-weighed the relevant public and private interests implicated by the Stop Notice statute, failed to consider procedural safeguards provided by Mississippi law, and ignored the "important governmental or general public interest" exception provided by *Fuentes*, 407 U.S. at 91.[4]

---

[4] In a Fed. R. App. P. 28(j) letter and at oral argument, the State contested Noatex's standing to bring this suit based on Noatex's apparent failure to obtain a "certificate of responsibility" for the subject construction project pursuant to Miss. Code Ann. § 31-3-15, which would render the subcontractor's contract with the general contractor void and prohibit the subcontractor from maintaining a breach of contract action. *See Ace Pipe Cleaning, Inc. v. Hempill Constr. Co.*, No. 2012-CA-00550-COA, 2013 WL 2166116, at *1–*5 (Miss. Ct. App. May 21, 2013); *see also United Plumbing & Heating Co., Inc. v. AmSouth Bank*, 30 So.3d 343, 347 (Miss. Ct. App. 2009). However, "[i]t has long been the rule in this circuit that any issues not briefed on appeal are waived," *United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000), and the State has not briefed this issue nor explained how a party's inability to sue based on a void contract would translate to a lack of standing to sue on its constitutional claims. We therefore conclude that the State has waived this argument and decline to reach its merits. *Id.*

Nos. 12-60385 & 12-60586

The Stop Notice statute deprives the contractor of a significant property interest, the right to receive payment and to be free from any interference with that right. *See, e.g.*, *Guy H. James Constr. Co. v. State ex rel. Okla. Dep't Transp.*, 655 P.2d 553, 554–56 (Okla. 1982) ("We hold that depriving the general contractor of the use of money earned constitutes interference with a significant property interest to which the requirements of due process attach."); *Miss. Chem. Corp. v. Chem. Constr. Corp.*, 444 F. Supp. 925, 934 (S.D. Miss. 1977) ("The effect . . . has been to freeze the debts owing from these defendants to [plaintiff]. This deprivation, although temporary, is nonetheless a deprivation of property sufficient to trigger the need for procedural due process pursuant to the due process . . . ."). The Stop Notice statute authorizes the withholding of monies earned from the contractor for an indefinite period of time and could prevent a contractor from paying its ordinary business obligations.

The Stop Notice statute is profound in its lack of procedural safeguards. It provides for no pre-deprivation notice or hearing of any kind. *See Fuentes*, 407 U.S. at 90–93 (holding a lack of pre-deprivation notice or hearing dispositive in all but "extraordinary situations" (quoting *Boddie*, 401 U.S. at 379)). It requires no posting of a bond on the part of the subcontractor prior to attachment. *See Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 606–08 (1974) (relying in part on a bond requirement to hold constitutional a Louisiana sequestration procedure that lacked pre-deprivation notice and hearing requirements); *cf. Fuentes*, 407 U.S. at 83–84 (finding a due process violation even where the posting of a bond was required). The statute does not require a showing of exigent circumstances for attachment nor is it narrowly drawn to those circumstances. *See Fuentes*, 407 U.S. at 93 ("There may be cases in which a creditor could make a showing of immediate danger that a debtor will destroy or conceal disputed goods. But the statutes before us are not 'narrowly drawn to meet any such unusual condition.'" (citation omitted)). The statute even fails to require any affidavit or

8

attestation setting out the facts of the dispute and the legal rationale for the attachment. *Cf. N. Ga. Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 606–08 (1975) (finding a due process violation despite a pre-deprivation affidavit requirement safeguard because it required *insufficiently* detailed affidavits of this kind) (emphasis added).

In light of these procedural deficiencies, the safeguards that the State identifies cannot rescue the facial constitutionality of the Stop Notice statute. The State points to, for example, the civil penalty provision for "falsely and knowingly" filing a stop notice claim, which allows a contractor to seek judicial review of "falsely and knowingly" filed stop notices. Miss. Code Ann. § 85-7-201; *see also* Miss. Code Ann. § 85-7-197. However, even this modest safeguard is at best a post-deprivation remedy, and it therefore carries little weight as an acceptable buttress against erroneous deprivation. *See Doehr*, 501 U.S. at 14–15 (finding a "postattachment adversary hearing" to be an insufficient due process safeguard).

The State's attempted invocation of *Fuentes* is similarly unavailing. The "extraordinary situations" exception defined by that case has three requirements: (1) that the seizure be "directly necessary to secure an important governmental or general public interest"; (2) that there be a "special need for very prompt action"; and, (3) that "the person initiating the seizure [be] a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance." *Fuentes*, 407 U.S. at 91. The State asserted as an important governmental interest the promotion of the health of the construction industry, and the need to provide an adequate remedy to subcontractors and materialmen.[5]

---

[5] In the State's briefing on appeal, the State argued as part of its "important governmental interest" that the statute allows the State to secure *in rem* or *quasi in rem*

Nos. 12-60385 & 12-60586

First, the immediate freezing of monies from the owner to the contractor is not "directly necessary" to achieve the asserted interest. Second, there is no "special need" for prompt action and no reason that providing adequate pre-deprivation procedures would conflict with the asserted state interest. Finally, even accepting *arguendo* that the Stop Notice statute meets the first two requirements of this test, it clearly fails the third. The Stop Notice statute allows attachment, and therefore deprivation, by mere notice from a subcontractor without any intervention by a government official. In contrast, *Fuentes* requires that "the State [keep] strict control over its monopoly of legitimate force" when it seeks to invoke the important governmental interest exception. *Fuentes*, 407 U.S. at 91.

Owing to the lack of procedural safeguards governing the statutory attachment process at issue, we hold that Mississippi's Stop Notice statute amounts to a facially unconstitutional deprivation of property without due process.

## B.   King's Motion to Withdraw

We have "broad discretion to grant voluntary motions to dismiss." *Am. Automobile Mfg'rs Ass'n v. Comm'r Mass. Dep't Env. Protection*, 31 F.3d 18, 22 (1st Cir. 1994) (citations omitted); *see* Fed. R. App. P. 42 (b) ("An appeal *may* be dismissed . . . .") (emphasis added). "Such motions are generally granted, but may be denied in the interest of justice or fairness." *Id.* King filed a motion to

---

jurisdiction over assets of a contractor who may not otherwise be subject to jurisdiction in Mississippi. We conclude that the State has waived this argument. *See Conley v. Bd. of Trs. of Grenada Cnty. Hosp.*, 707 F.2d 175, 178 (5th Cir. 1983)(stating as a "general principle of appellate review," failure to raise an argument before the district court waives that argument, unless the issue is a purely legal one and the asserted error is so obvious that the failure to consider it would result in a miscarriage of justice); *see also XL Specialty Ins. Co. v. Kiewit Offshore Serv. Ltd*, 513 F.3d 146, 153 (5th Cir. 2008) (citing *Stokes v. Emerson Elec. Co.*, 217 F.3d 353, 358 n.19 (5th Cir. 2000) ("An argument not raised before the district court cannot be asserted for the first time on appeal."). Further, such an interest would not save this statute from this constitutional challenge.

withdraw its appeal pursuant to Fifth Circuit Rule 42.1; such a motion requires dismissal "where the appellant or petitioner files an *unopposed* motion to withdraw . . . ." 5th Cir. R. 42.1. (emphasis added). Noatex strenuously opposed the motion and argued that King was attempting to evade potential liability for attorney's fees. Regardless of King's glaring misrepresentation to this court that the motion was unopposed, dismissal of King's appeal "would be a meaningless gesture." *Twp. of Benton v. Cnty. of Berrien*, 570 F.2d 114, 118–19 (6th Cir. 1978) (denying a motion to dismiss an appeal filed by one of two appellants where appellants would make the same argument and both would be affected by the appeal). Both King and the State press the same arguments concerning the constitutionality of the statute and both parties are ultimately affected by our decision. For these reasons, we deny King's motion to withdraw its appeal.[6]

## C.    Noatex's Motion for Further Relief

"Further necessary or proper relief based on a declaratory judgment or decree may be granted . . . against any adverse party whose rights have been determined by judgment." 28 U.S.C. § 2202. Monetary damages are allowed under this provision and we review a district court's decision to grant or deny such monetary damages for abuse of discretion. *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 569–70 (5th Cir. 2005). We find such an abuse of discretion only when no reasonable person could take the view adopted by the district court; therefore, if reasonable persons could differ, no abuse of discretion will be found. *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 638 (5th Cir. 2012); *see also Dawson v. United States*, 68 F.3d 886, 896 (5th Cir. 1995).

---

[6] We note that King's counsel also filed a motion to withdraw. In a subsequent order to show cause, counsel indicated that he no longer represented King. We granted his motion to withdraw after this response. Carl King proceeded *pro se* in this action and King Construction proceeded without counsel. Neither filed a brief or argued their case to this Court on appeal.

Nos. 12-60385 & 12-60586

The district court premised its decision denying further relief on the fact that its grant of summary judgment on Noatex's declaratory judgment claim did not determine Noatex's rights with respect to the money originally withheld by APMM after the stop notice. Noatex's declaratory judgment action only requested a nullification of the stop notice, and that nullification was the only relief that the district court granted. The district court reasoned that in the absence of a determination as to Noatex's rights to the money frozen by the stop notice or a determination that Noatex was otherwise entitled to recover damages, a damages award on a "further relief" motion was inappropriate.

The district court's determination was reasonable. Section 2202 specifically requires that further relief can only issue against an "adverse party *whose rights have been determined by such judgment.*" 28 U.S.C. § 2202 (emphasis added). In the absence of any determination by the district court as to the respective rights of the parties involved—APMM and Noatex—beyond its narrow holding that the stop notice procedure invoked by King was unconstitutional, the district court's denial of further relief was not an abuse of discretion.

Nor was the district court's denial of further relief in the form of attorney's fees relating to the interpleader action an abuse of discretion. Noatex contends that it was entitled to attorney's fees because King's service of the stop notice violated 42 U.S.C. § 1983—which provides for fee awards pursuant to 42 U.S.C. § 1988(b)—and directly led to the institution of the interpleader action. We nevertheless conclude that it was reasonable for the district court to deny this motion for further relief given that the fees requested were for another lawsuit that continues to be contested even after the declaratory judgment.[7]

## D.    Stay of the Motion for Appeal Bond

---

[7] *See Auto Parts Mfg. Miss., Inc. v. King Constr. of Houston LLC*, No.1:11-cv-00251 (N.D. Miss. filed Dec. 5, 2011).

12

We review a district court's decision to stay a proceeding for abuse of discretion; "[h]owever, to the extent that such a decision rests on an interpretation of law, the review is *de novo*." *Kelly Inv., Inc. v. Cont'l Common Corp.*, 315 F.3d 494, 497 (5th Cir. 2002) (citation omitted). The same standard of review applies to a district court's ruling on a motion for an appeal bond under Federal Rule of Appellate Procedure 7. *See* Fed. R. App. P. 7; *Young v. New Process Stell, LP*, 419 F.3d 1201, 1203 (11th Cir. 2005), *cert. denied*, 547 U.S. 1003 (2006) ("While this Court generally reviews a district court's imposition of a Rule 7 cost bond only for abuse of discretion, that limited standard does not mean much in this case, which turns on a pure law issue involving the interpretation of Rule 7. We decide pure law issues *de novo* . . . ."(internal citation omitted)); *see also Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 955 (9th Cir. 2007); *Adsani v. Miller*, 139 F.3d 67, 71 (2d Cir. 1998), *cert. denied* 525 U.S. 875 (1998). Noatex alleges that the district court's entry of a stay pending appeal had the effect of denying Noatex's Rule 7 motion for an appeal bond, and that this denial should be reversed as an abuse of discretion.

We disagree. There was no abuse of discretion in the district court's implicit denial of Noatex's Rule 7 motion. Noatex requested an appeal bond of $31,000, reflecting an estimated $30,000 in attorney's fees on appeal[8] and $1,000 in other costs. In assessing a Rule 7 motion, the relevant factors are: (1) whether there is a risk of non-payment in the event that the appellants lose their appeal, (2) any previous bad faith or vexatious conduct on part of the appellants, and (3)

---

[8] Rule 7 provides that "the district court may require an appellant to file a bond . . . to ensure payment of costs on appeal." Fed. R. App. P. 7. The propriety of including attorney's fees as "costs" under Rule 7 is subject to some dispute. *See In re Am. President Lines, Inc.*, 779 F.2d 714, 716 (D.C. Cir. 1985) (holding that attorney's fees do not constitute costs under Rule 7); *but see Sams v. Hoechst Aktiengesellschaft (In re CD Antitrust Litig.)*, 391 F.3d 812, 816–17 (6th Cir. 2004) (holding that attorney's fees can constitute costs under Rule 7 where the statute governing the underlying cause of action defines costs to include attorney's fees). We assume without deciding that attorney's fees may constitute costs for Rule 7 purposes here.

the likely merits of the appeal. *See Adsani*, 139 F.3d at 78–79; *In re Am. President Lines, Inc.*, 779 F.2d 714, 716–17 (D.C. Cir. 1985); *Tri-Star Pictures Inc. v. Unger*, 32 F. Supp. 2d 144, 147–49 (S.D.N.Y. 1999). Given the record and circumstances of this case, we conclude that there was no abuse of discretion and we decline to disturb the district court's stay. This does not preclude any arguments that may be made to the district court concerning Noatex's entitlement to the costs it included in the underlying bond amount.

## III. CONCLUSION

In case No. 12-60385, we AFFIRM the district court's determination that Mississippi's Stop Notice statute is facially unconstitutional, and we DENY King's motion to withdraw its appeal.

In case No. 12-60586, we AFFIRM the district court's denial of Noatex's motion for further relief, and we AFFIRM the district court's stay of Noatex's appeal bond motion.