# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-60397

United States Court of Appeals
Fifth Circuit

**FILED**

April 21, 2015

Lyle W. Cayce
Clerk

NOATEX CORPORATION, a California Corporation,

Plaintiff - Appellant

v.

KING CONSTRUCTION COMPANY OF HOUSTON, L.L.C., A Mississippi limited liability company; ET AL,

Defendants

JAMES M. HOOD, III, Mississippi Attorney General, State of Mississippi, ex rel,

Intervenor - Appellee

Appeal from the United States District Court for
the Northern District of Mississippi
USDC No. 3:11-CV-137

Before JOLLY, WIENER, and CLEMENT, Circuit Judges.

PER CURIAM:*

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

The district court denied the motion for attorneys' fees pursuant to 42 U.S.C. § 1988(b) filed by Plaintiff-Appellant Noatex Corporation ("Noatex"). We affirm.

## I. Facts and Proceedings

Noatex contracted with former Defendants Carl King and King Construction of Houston, LLC ("King Construction") to provide labor and materials for the construction of a new factory for Auto Parts Manufacturing Mississippi ("APMM") in Guntown, Mississippi.  King Construction supplied labor and materials, for which Noatex allegedly failed to pay.  To secure the disputed funds, King Construction served a "stop notice" on APMM pursuant to Miss. Code Ann. § 85-7-181, which "bound" the disputed funds in the hands of APMM as the owner of the property for which King Construction had furnished labor and materials.

Following service of the stop notice, Noatex filed a complaint in the district court against Carl King and King Construction, seeking declaratory relief under 28 U.S.C. § 2201.  Noatex requested a declaration that the stop notice had no legal effect against the funds "bound" in the hands of APMM because the state's stop notice procedure violated "federal constitutional due process."  The complaint did not name any state official as a defendant. Neither did Noatex allege that, by virtue of serving the stop notice on APMM, King Construction colluded with state actors or otherwise engaged in action fairly attributable to the State of Mississippi.  Noatex's prayer for relief demanded "a judgment against King Construction Houston, LLC and all other Defendants declaring that the Laborer's and Materialman's Lien and Stop Notice, dated September 23, 2011, is void, invalid, and has no effect upon any funds in the hands of Auto Parts Manufacturing Mississippi Inc. that are owed to Noatex Corporation."

No. 14-60397

As required by state statute,[1] the State of Mississippi intervened in the action as a non-aligned party to defend the constitutionality of § 85-7-181. Noatex filed a motion for summary judgment, asserting that the stop notice statute lacked any of the minimum safeguards that due process requires to accompany such a substantial deprivation of property. The district court granted Noatex's motion, declaring the statute facially unconstitutional, vacating the stop notice, and ordering that it have "no effect on the funds that have been withheld by APMM." We affirmed the district court's judgment.

Back in district court, the case was reassigned for resolution of Noatex's pending motion for § 1988 attorneys fees. The district court denied Noatex's motion, reasoning that not only did Noatex fail to plead § 1983 in its complaint, but the substance of its complaint did not present a § 1983 claim. Noatex timely appealed. In November, 2014, we granted the joint settlement motion between Noatex and King Construction and Carl King, dismissing the King parties from this appeal. The only remaining question is whether Noatex may recover an award of § 1988(b) attorneys fees from Intervenor-Appellee the State of Mississippi.

## II. Analysis

**A.    Standard of review**

Section 1988(b) provides for an award of attorneys fees to prevailing parties in civil rights cases: "In any action or proceeding to enforce a provision of section[] . . . 1983 . . . of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."[2]  "We review a denial of § 1988 attorney's fees for abuse

---

[1] MISS. CODE. ANN. § 7-5-1 (West 2012).

[2] 42 U.S.C. § 1988(b).

of discretion."[3]    When determining whether the district court abused its discretion, we review the factual findings supporting the denial of attorneys fees for clear error and the conclusions of law underlying the denial *de novo*.[4] In so doing, we keep in mind that, in the context of § 1988(b), "a prevailing plaintiff should *ordinarily* recover an attorney's fee unless *special circumstances* would render such an award unjust."[5]

**B.     Section 1988(b)**

Noatex brought its complaint under the Declaratory Judgment Act, 28 U.S.C. § 2201, and asserted federal question jurisdiction under 28 U.S.C. § 1331.  Although the district court characterized its inquiry as whether the stop notice statute affords Noatex sufficient procedural due process under the Fifth and Fourteenth Amendments to the United States Constitution, the court did not cite § 1983 in granting summary judgment.  Only after obtaining judgment in its favor did Noatex assert that § 1983 governed its cause of action and therefore it was entitled to attorneys fees under § 1988(b).  We address whether the district court's summary judgment in Noatex's favor supports an award of attorneys fees under § 1988(b).

"The availability of attorneys' fees under § 1988(b) is expressly limited to actions or proceedings to enforce certain enumerated provisions of federal law, including § 1983."[6]  We have not explicitly ruled whether failure to plead § 1983 pretermits our consideration of a plaintiff's eligibility for § 1988(b) attorneys fees.  We held in *Kirchberg v. Feenstra* that the plaintiff could recover

---

[3] *Sanchez v. City of Austin*, 774 F.3d 873, 878 (5th Cir. 2014) (internal quotation marks omitted) (quoting *Dean v. Riser*, 240 F.3d 505, 507 (5th Cir. 2001)).

[4] *Id.*

[5] *Hous. Chronicle Pub. Co. v. City of League City, Tex.*, 488 F.3d 613, 623 (5th Cir. 2007) (internal quotation marks omitted) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)).

[6] *Planned Parenthood of Hous. & Se. Tex. v. Sanchez*, 480 F.3d 734, 738 (5th Cir. 2007).

attorneys' fees, even though she did not plead § 1983 in her complaint.  At the time the plaintiff filed her complaint however, § 1988 did not exist.  Because the plaintiff had "little reason" to hope she could obtain § 1988 fees by amending her complaint, and because § 1983 provided a remedy for her claim, we held that her failure to plead § 1983 in her complaint did not prevent her from receiving attorneys fees.[7]  Given the unique timing considerations in that case, we limited our holding to the facts before us: "We do not mean to imply that § 1988 fees are available in any action *which could be brought under § 1983*, or even in any action which could have been brought under § 1983 prior to the enactment of § 1988."[8]

Since our decision in *Kirchberg*, other courts have ruled that a prevailing party may recover § 1988 fees without explicitly pleading § 1983: "The mere failure to plead or argue reliance on § 1983 is not fatal to a claim for attorney's fees if the pleading and evidence do present a substantial Fourteenth Amendment claim for which § 1983 provides a remedy, and this claim is related to the plaintiff['s] ultimate success."[9]  We agree and hold that a party may recover § 1988(b) fees without pleading § 1983—if his complaint presents a claim for which § 1983 affords succor.  This holding accords with our observation in *Kirchberg* that "the courts have taken an extremely liberal view on nearly every interpretative question that has arisen under § 1988."[10] It also

---

[7] *Kirchberg v. Feenstra*, 708 F.2d 991, 1000-01 (5th Cir. 1983).

[8] *Id.* at 1000 (emphasis supplied); *see Espino v. Besterio*, 708 F.2d 1002, 1008 n.9 (5th Cir. 1983) ("We do not mean to imply in *Feenstra* that § 1988 fees are appropriate whenever § 1983 could have been pleaded, but was not . . . .").

[9] *Am. United for Separation of Church & State v. Sch. Dist. of City of Grand Rapids*, 835 F.2d 627, 631 (6th Cir. 1987); *see, e.g.*, *Haley v. Pataki*, 106 F.3d 478, 481 (2d Cir. 1997) (holding that a plaintiff's failure to plead § 1983 in its complaint does not preclude award of attorneys' fees under § 1988(b)).

[10] *Kirchberg*, 708 F.2d at 1000 (internal quotation marks omitted) (quoting *Williams v. Thomas*, 692 F.2d 1032, 1036 (5th Cir. 1982)); *see also Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346 (2014) ("[N]o heightened pleading rule requires plaintiffs seeking damages for

complements the United States Supreme Court's recent ruling in *Johnson v. City of Shelby, Mississippi*, that a plaintiff need not explicitly plead his constitutional claim against a municipality under § 1983 to survive a Rule 12(b)(6) motion, as long as the complaint alleges factual material that sufficiently demonstrates that the claim has substantive plausibility.[11] We therefore hold that Noatex may recover § 1988(b) attorneys' fees *if* its pleadings and the evidence present a substantial claim for which § 1983 affords relief.

## C.    Section 1983

Noatex sought a declaratory judgment that the stop notice served by King Construction on APMM lacked legal effectiveness because it violated "federal constitutional due process."   On appeal, Noatex contends that "everyone knew" that it was pursuing a lawsuit under § 1983, despite the fact that Noatex did not (1) expressly plead § 1983 in its complaint, (2) sue any state official, or (3) allege that King Construction acted under color of state law.

 "To state a Fourteenth Amendment due process claim under § 1983, a plaintiff must first identify a protected life, liberty, or property interest and then prove that governmental action resulted in a deprivation of that interest."[12] The parties do not dispute that King Construction's service of the stop notice, which seized money allegedly due to Noatex, constitutes a deprivation of a protected property interest.  The question instead is whether

---

violations of constitutional rights to invoke § 1983 expressly in order to state a claim." (citations omitted)).

[11] *Johnson*, 135 S. Ct. at 347.

[12] *Morris v. Livingston*, 739 F.3d 740, 749-50 (5th Cir. 2014) (internal quotation marks omitted) (quoting *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010)).

No. 14-60397

King Construction's conduct in serving the stop notice constituted governmental action sufficient to state a due process claim under § 1983.[13]

As noted, King Construction is a private party. "[P]rivate use of the challenged state procedures with the help of state officials constitutes state action."[14] We consider two questions when determining whether private conduct is fairly attributable to the State: (1) Does the claimed constitutional deprivation result from "the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible," and (2) Is the party charged with the deprivation fairly described as a state actor?[15] With this framework in mind, we turn to the record to see if it supports the conclusion that Noatex presented a substantial claim for which § 1983 affords a remedy.

With respect to the first prong, we hold that the claimed constitutional deprivation—here, the encumbrance of funds effected by King Construction's service of the stop notice on APMM—results from "a rule of conduct imposed

---

[13] Noatex contends that we "necessarily" affirmed the district court's alleged "finding" of state action in our opinion affirming the district court's judgment, referring to this isolated language in the district court's order: "Noatex has been completely deprived of the use of the money; it has been held beyond Noatex's control as a result of state action, *i.e.*, use of the procedures set forth by state statue." This is the only reference to state action that appears in the court's order, and is neither preceded nor followed by any state action analysis. Had the district court intended to hold that King Construction's conduct constituted state action, making it liable under § 1983, the court would have explicitly held so. And we held in *Noatex Corp. v. King Const. of Hous., L.L.C.*, that "[t]he stop notice statute allows attachment, and therefore deprivation, by mere notice from a subcontractor *without* any intervention by a government official." 732 F.3d 479, 487 (5th Cir. 2013) (emphasis supplied). Accordingly, we reject Noatex's contention that we are bound by that alleged "finding" of state action. *See Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir. 2001) (". . . the law of the case doctrine applies only to issues that were actually decided, rather than all questions in the case that might have been decided, but were not" (citing *Morrow v. Dillard*, 580 F.2d 1284, 1290 (5th Cir. 1978))).

[14] *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 933 (1982).

[15] *Id.* at 937.

by the State."[16]  We next turn to the second prong, *viz.*, whether King Construction's service of the stop notice is fairly *attributable* to the state.[17]  In so doing, we remain mindful that our precedent and that of the Supreme Court "has not been a model of consistency"—in part because the state action inquiry is closely tied to the "peculiar facts and circumstances" present in each case. [18] The case at hand falls somewhere between the Court's decisions in *Lugar v. Edmonson Oil Co.* and *Flagg Brothers, Inc. v. Brooks.*

In *Flagg Brothers*, the Court held that the defendant-creditor's sale of the plaintiff's goods following her non-payment of storage fees, in accordance with state statute, did not constitute state action sufficient to assert a § 1983 claim because the defendant acted on its own: "This *total absence of overt official involvement* plainly distinguishes this case from earlier decisions imposing procedural restrictions on creditors' remedies . . . . "[19]  In *Lugar*, the defendant relied on a state statute when applying to the county clerk for a writ attaching the plaintiff's property, which attachment was then executed by the county sheriff.  In holding that state action existed in *Lugar*, the Court distinguished *Flagg Brothers* on the ground that the "private use of the challenged state procedures with the *help of state officials* constitutes state action for purposes of the Fourteenth Amendment;"[20] and, noted its consistent

---

[16] *See* MISS. CODE ANN. § 85-7-181 (West 2013) (repealed 2014); *Lugar*, 457 U.S. at 937 (noting that the "rule of conduct" prong is satisfied by a state statute providing the right to obtain prejudgment attachment, and the procedure by which the rights could be exercised).

[17] *See Lugar*, 457 U.S. at 937; *see also id.* ("Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them.").

[18] *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 632 (1991) (O'Connor, J., dissenting).

[19] *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 157 (1978) (emphasis supplied); *see Lugar*, 457 U.S. at 930 ("The Court concluded that the sale, *although authorized by state law*, did not amount to state action under the Fourteenth Amendment . . . .") (describing *Flagg Bros.*) (emphasis supplied).

[20] *Lugar*, 457 U.S. at 933 (emphasis supplied).

jurisprudence that "constitutional requirements of due process apply to garnishment and prejudgment attachment procedures whenever *officers of the State act jointly* with a creditor in securing the property in dispute."[21]   The Court emphasized that "[c]areful adherence to the 'state action' requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power . . . . [and] avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot be fairly blamed."[22]

Within that framework, we are convinced that the facts alleged in Noatex's complaint fail to meet the second prong, i.e., that the "party charged with the deprivation must be a person who may fairly be said to be a state actor."[23]   Noatex's complaint does not allege that state officials "act[ed] jointly with [King Construction] in securing the property in dispute."  Instead, Noatex alleges that "*King Construction* caused a [stop notice] to be filed in the records of the Lee County Chancery Court . . . . *King Construction* also caused a copy of the Stop Notice to be served upon APMM," and, "*King Construction* filed and served its [stop notice] . . . without obtaining any *court ordered* writ of sequestration or garnishment."[24]     The only allegation concerning any individual that *might* conceivably qualify as a state actor implicates the clerk of the chancery court, who recorded the stop notice in the *lis pendens* record. But, Noatex itself describes the clerk's function in recording the notice as "solely ministerial."     In this sense, the case is essentially identical to *Cobb v. Saturn Land Co.*[25]  There, the United States Court Of Appeals for the Tenth

---

[21] *Lugar*, 457 U.S. at 932-33 (emphasis supplied) (citations omitted).

[22] *Id.* at 936; *see Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999) ("Action taken by private entities with the mere approval or acquiescence of the State is not state action.") (citations omitted).

[23] *See Lugar*, 457 U.S. at 937.

[24] Emphasis supplied.

[25]  966 F.3d 1334, 1337 (10th Cir. 1992).

No. 14-60397

Circuit reasoned that "the actions of the county clerk, who merely accepted and recorded the required lien material prepared by Defendant and then issued filing notices to Plaintiff, were *not substantial* enough to bring Plaintiff's claim within the ambit of § 1983."[26]

We acknowledge that the procedural scheme created by the stop notice statute *is* the product of state action. But such a scheme is only addressed properly in a § 1983 action "*if* the second element of the state-action requirement is met as well."[27] We cannot discern any state action from Noatex's pleadings or from the record.[28] This is so in part because Noatex did not proceed under § 1983, obviating the need for Noatex to plead and meet its evidentiary burden with respect to state action and for the district court to analyze whether state action was present. And, although we are mindful that the joint participation requirement need not entail anything more than "invoking the aid of state officials to take advantage of state-created procedures," King Construction had to "make use of state procedures with the *overt, significant assistance* of state officials" to qualify as state action

---

[26] *Id.* (emphasis supplied).

[27] *Lugar*, 457 U.S. at 941 (emphasis supplied).

[28] Noatex cites the Court's observation in *Lugar* that, in three cases concerning constitutional due process requirements in the context of garnishment actions, "[e]ach of these cases involved a finding of state action as an implicit predicate of the application of due process standards." Appellant's Brief at 11 (quoting *Lugar*, 457 U.S. at 927 (citing *N. Ga. Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601 (1975); *Mitchell v. W.T. Grant Co.*, 416 U.S. 600 (1974); *Fuentes v. Shevin*, 407 U.S. 67 (1972))). Noatex ignores the latter half of the Court's analysis, which is that *"Flagg Brothers* distinguished [the cited cases] on the ground that in each there was *overt, official involvement in the property deprivation,*" and, "there was *no such overt action by a state officer* in *Flagg Brothers.*" *Lugar*, 457 U.S. at 927 (emphasis supplied). So, although the *cited* cases assumed state action as an "implicit predicate" of the application of due process standards, this assumption was tied to the existence of "overt, official involvement in the property deprivation." *See Lugar*, 457 U.S. at 927. We reject Noatex's reliance on this cherry-picked language to support its contention on appeal that we "necessarily" decided state action.

No. 14-60397

sufficient "to implicate the Due Process Clause" and § 1983.[29]  Neither King Construction's service of the stop notice nor the chancery court clerk's filing of the stop notice in the *lis pendens* record bring Noatex's claim within the ambit of § 1983.[30]  We therefore hold that Noatex did not present a substantial Fourteenth Amendment claim for which § 1983 affords a remedy, so the district court did not err in denying Noatex's request for attorneys fees under § 1988(b).[31]

### III.  Conclusion

Finally, an observation.  Noatex makes much of the fact that because, in its view, the case proceeded *as if* state action was pleaded and proved, we *must* award § 1988 fees.  We are troubled by this  "gotcha" approach.[32]  As Noatex would have it, a plaintiff could sidestep the grunt work of pleading and proving state action, then receive § 1988(b) attorneys' fees at the conclusion of the case,

---

[29] *See Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 486 (1988) ("Private use of state-sanctioned private remedies or procedures does not rise to the level of state action . . . . But when private parties make use of state procedures with the *overt, significant assistance of state officials*, state action may be found.") (emphasis supplied).

[30] *See Cobb*, 966 F.2d at 1337; *see also Haley*, 106 F.3d at 482 (holding the plaintiffs could recover § 1988(b) fees despite failing to plead § 1983 in their complaint because they (1) sued the governor, a state official who is a person under § 1983, (2) the complaint *"sufficiently alleges that [the state official] acted under color of state law,"* and (3) the complaint alleged that defendants' conduct deprived plaintiffs of their constitutional rights) (emphasis supplied).

[31] We do not address Noatex's other contentions raised on appeal: (1) the declaratory judgment rendered Noatex a "prevailing party" for the purpose of § 1988(b), (2) the State of Mississippi is liable for attorneys fees in its capacity as a non-aligned intervenor, and (3) the State's defense of the statute was unreasonable and without foundation.

[32] *See Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 50 ("Perhaps hoping to avoid the traditional application of our state-action cases, respondents attempt to characterize their claim as a 'facial' or 'direct' challenge to the utilization review procedures contained in the act . . . . [t]his argument, however, ignores our repeated insistence that state action requires *both* an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' *and* that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" (quoting *Lugar*, 457 U.S. at 937)); *see also Haley*, 106 F.3d at 482 (noting that the court required that the "plaintiffs meet the evidentiary burden of a section 1983 claim" before awarding § 1988 fees).

11

No. 14-60397

without the court ever analyzing the merits of the plaintiff's putative § 1983 claim.  We will not countenance such legalistic legerdemain.

The judgment of the district court is AFFIRMED.